DANIEL G. BOGDEN
United States Attorney
District of Nevada
TROY K. FLAKE
Assistant United States Attorney
United States Attorney's Office
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
Telephone: 702-388-6336
Facsimile: 702-388-6787
Email: *troy.flake@usdoj.gov*
Attorneys for the United States.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

COLLEGIUM FUND, LLC, SERIES 5, a Nevada )
limited liability company,                )      Case No.: 2:13-cv-01550-GMN-VCF
                                          )
                Plaintiff,                )
                                          )
        v.                                )
                                          )
WELLS FARGO BANK, N.A.; HOUSING AND       )
URBAN DEVELOPMENT; ADELE KADANS;          )
DOROTHY L. KEMP; DONALD R. KEMP;          )
RAFAEL GIRALDO; LEONA MARTIN; and         )
DOES I through X inclusive,               )
                                          )
                Defendants.               )
                                          )

## UNITED STATES' MOTION TO DISMISS

The United States of America, acting by and through Secretary Shaun Donovan, Secretary of the United States Department of Housing and Urban Development ("HUD"), hereby moves to dismiss the Complaint in this action (ECF No. 1) under Fed. R. Civ. P. 12(b)(6), because the complaint fails to state a claim upon which relief can be granted. This Motion to Dismiss is supported by the accompanying memorandum of points and authorities and exhibit attached to it.

Respectfully submitted this 3rd day of February 2014.

DANIEL G. BOGDEN
United States Attorney

    /s/  *Troy K. Flake*
TROY K. FLAKE
Assistant United States Attorney

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The property at 324 Wild Plum Lane, Las Vegas, Nevada (the "Property") secures a promissory note belonging to HUD with a balance of $307,774.32.  On July 12, 2013, Plaintiff alleges it paid $10,600.00 for its interest in the Property at a non-judicial foreclosure sale.  HUD did not have notice of this sale. Plaintiff now claims that the non-judicial foreclosure extinguished HUD's interest in the Property and that this court should quiet title in Plaintiff's favor.

HUD obtained its interest in the property through a nationwide lending program designed to assist elderly homeowners.  HUD respectfully requests that the court dismiss the Complaint because federal law protects HUD's interest from non-judicial foreclosure.  The Complaint also fails to state a claim under state law because foreclosure of an assessment lien under NRS 116.3116 does not extinguish the first security interest.

## II.    BACKGROUND

Defendant Kadans took title to the Property in March of 1996 (ECF No. 1, Ex. B at Ex. 3).  In January 2005, Kadans executed a Deed of Trust in favor of Wells Fargo as security for a Note in the amount of $400,500.00 (ECF No. 1, Ex. B at Ex. 4).  The Deed of Trust was insured by HUD pursuant to the Home Equity Conversion Mortgage ("HECM") program as set forth in § 255(a) of the National Housing Act, Public Law 73-479, 48 Stat. 1246 (12 U.S.C. § 1715(z-20)) (ECF No. 1, Ex. B at Ex. 6).  On September 3, 2008, Wells Fargo recorded an assignment of the Deed of Trust to HUD (ECF No. 1, Ex. B at Ex. 5).

In March of 2012, Kadans passed away.[1]  On October 17, 2012, the HOA, through its agent Nevada Association Services, recorded a Notice of Delinquent Assessment Lien on the Property for $2,693.60 because the HOA assessments had not been paid since around the time of Kadans' death (ECF No. 1, Ex. B at Ex. 8).  On December 21, 2012, the HOA recorded a Notice of Default and

---

[1] *See* Adele Kadans Obituary at http://obits.reviewjournal.com/obituaries/LVRJ/obituary.aspx?n=Adele-Kadans&pid=156442338. Courts may take judicial notice of a person's death based on a newspaper obituary. *See Wilson v. Gordon & Wong Law Grp., P.C.*, 2013 WL 6858975 (E.D. Cal. Dec. 24, 2013).

Election to Sell, listing a delinquency of $3,922.60 (ECF No. 1, Ex. B at Ex. 9).  On June 17, 2013, the HOA recorded a notice of foreclosure asserting a delinquency of $6,039.70 and setting a sale for July 12, 2013 (ECF No. 1, Ex. B at Ex. 10).  HUD asserts that neither it nor its contractor received any of these notices and Plaintiff has provided no evidence to the contrary.

On June 18, 2013, HUD, acting through Cimarron Service Corp., recorded a Notice of Default and Foreclosure sale, setting a date of August 13, 2013 (ECF No. 1, Ex. B at Ex. 6).  The HOA's non-judicial foreclosure sale occurred on July 12, 2013, and the HOA's interest in the Property was sold to Plaintiff for $10,600.00 (ECF No. 1, Ex. B at Ex. 2).

On August 6, 2013, Plaintiff filed an action in the District Court, Clark County, Nevada, seeking quiet title to the Property and to obtain equitable relief.  Plaintiff claims that the foreclosure of the HOA assessment lien (the "Assessment Lien") extinguished HUD's first security interest in the Property. Plaintiff moved for a temporary restraining order and a preliminary injunction to prevent HUD from conducting its foreclosure sale of its first security interest.  Judge Gloria Sturman of the Eighth Judicial District Court, Clark County, Nevada granted a temporary restraining order.

Because HUD is a federal entity, it removed this action to federal court and this Court extended the temporary restraining order until the issues could be briefed.  On September 10, 2013, this Court dissolved the temporary restraining order and denied the Motion for Preliminary Injunction, stating that the Foreclosure Deed did not reflect a transfer "that would give Plaintiff legal title to the property, free and clear of all encumbrances" (ECF No. 14 at 4).  On November 26, 2013, Plaintiff filed an Amended Complaint (ECF No. 23).

After this Court dissolved the temporary restraining order, HUD noticed another foreclosure sale for December 19, 2013.  Plaintiff appealed denial of the preliminary injunction (ECF No. 19) and, before the sale could proceed, the Ninth Circuit granted the injunction pending a ruling on its appeal of the denial of the Motion for Preliminary Injunction (ECF No. 46).  As of January 31, 2014, HUD is owed $307,774.32 (Exhibit, HUD Statement of Account).

1    HUD now moves to dismiss because Plaintiff's complaint fails to state a claim on which relief

2 can be granted.

3 **III.    LEGAL STANDARD**

4    Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that

5 fails to state a claim upon which relief can be granted.  *See North Star Int'l v. Ariz. Corp. Comm'n*, 720

6 F.2d 578, 581 (9th Cir.1983).  Under Rule 12(b)(6), dismissal for failure to state a claim is appropriate

7 only when the complaint does not give the defendant fair notice of a legally cognizable claim and the

8 grounds on which it rests.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

9    In considering whether the complaint is sufficient to state a claim, the Court takes all material

10 allegations as true and construes them in the light most favorable to the plaintiff.  *See NL Indus. v.*

11 *Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  "However, conclusory allegations of law and unwarranted

12 inferences are not sufficient to defeat a motion to dismiss."  *Associated Gen. Contractors of America v.*

13 *Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir.1998) (citation and internal quotation marks

14 omitted).  A motion to dismiss is an appropriate mechanism to challenge the sufficiency of the

15 complaint where a plaintiff's claim is dependent on a particular interpretation of a statute.  *See Wilshire*

16 *Westwood Assoc. v. Atl. Richfield Corp.*, 881 F.2d 801, 803 (9th Cir. 1989) (affirming motion to dismiss

17 based on interpretation of petroleum exclusion in CERCLA).

18     "Generally, a district court may not consider any material beyond the pleadings in ruling on a

19 Rule 12(b)(6) motion.... However, material which is properly submitted as part of the complaint may be

20 considered on a motion to dismiss."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

21 1555 n.19 (9th Cir. 1989) (citations omitted).  Similarly, "documents whose contents are alleged in a

22 complaint and whose authenticity no party questions, but which are not physically attached to the

23 pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the

24 motion to dismiss into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

25 1994). Fed. R. Evid. 201(b)(2) allows the court to take judicial notice of matters of public record and

26 other facts not subject to reasonable dispute because they are "capable of accurate and ready

4

1    determination by resort to sources whose accuracy cannot reasonably be questioned." *Wilshire*

2    *Westwood*, 881 F.2d at 803 (quoting Fed. R. Evid. 201).

3    **IV.    ARGUMENT**

4          **A.    THE FEDERAL INTEREST IN THE PROPERTY CANNOT BE**
             **EXTINGUISHED BY NON-JUDICIAL FORECLOSURE SALE**
5

6          In its Complaint for quiet title, Plaintiff fails to consider that HUD is a federal entity governed by

7    federal law, and that HUD obtained its interest in the Property through the National Housing Act's

8    nationwide Home Equity Conversion Mortgage ("HECM") insurance program.  Federal law protects

9    HUD's first security interest where extinguishment would interfere with federal purposes, or impede or

10   condition implementation of federal policies and programs.  Accordingly, Plaintiff's Complaint fails to

11   state a claim against HUD.

12                    **1.   The Property and Supremacy Clauses require that federal law, not state law,**
                          **govern all issues relating to United States' property, including liens.**
13

14         The United States Constitution provides "The Congress shall have Power to dispose of and make

15   all needful Rules and Regulations respecting ... Property belonging to the United States ...."  U.S. Const.

16   art. IV, § 3, cl. 2.  Congress' power to dispose of property belonging to the United States is "without

17   limitation." *State of Alabama v. State of Texas*, 347 U.S. 272, 273 (1954).

18         The Supreme Court defines "property" to include "all other personal and real property rightfully

19   belonging to the United States." *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 331 (1936).  The Ninth

20   Circuit has held that "[n]o basis in law exists for treating mortgage interests of federal instrumentalities

21   differently from other property of the United States."  *Rust v. Johnson*, 597 F.2d 174, 177 (9th Cir.

22   1979) (foreclosure sale did not extinguish FNMA's lien).

23         When Congress exercises authority under the Property Clause, questions related to "[t]he validity

24   and construction of contracts …, their consequences on the rights and obligations of the parties, the titles

25   or liens which they create or permit, all present questions of federal law not controlled by the law of any

26   state." *United States v. Allegheny Cnty.*, 322 U.S. 174, 183 (1944) (abrogated on other grounds).

Federal law controls these issues by virtue of the Supremacy Clause, which provides that "[t]his Constitution, and the Laws of the United States, which shall be made in Pursuance thereof ... shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. "The Supremacy Clause seeks to avoid the introduction of the disparity, confusion, and conflict which would follow if the Government's general authority is subject to local controls." *Rust,* 597 F.2d at 179 (citing *Allegheny*, 322 U.S. at 183).

Plaintiff's claim for quiet title is squarely within the ambit of the Property and Supremacy Clauses. The United States' interest should not be subject to the "confusion and conflict" of Nevada's law. Accordingly, federal law, not state law, controls in this case.

### 2. The Ninth Circuit has held that state rules should not be adopted where a foreclosure would extinguish a lien arising from a national home lending insurance program.

Congress has not specifically indicated whether non-judicial foreclosure of an HOA lien can divest HUD of its interest in property obtained through the HECM program. In the absence of a Congressional directive on the disposition of the United States' property, federal courts "fashion the governing rule of law according to their own standards." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726-27 (1979). Courts make a "preliminary determination" about whether "state law should be the federal rule of decision." *Rust*, 597 F.2d at 179.

In *Kimbell Foods*, the Supreme Court analyzed several factors in determining whether federal courts should adopt a state rule for determining priority of federal interest in property, and held that state rules of priority should govern because individual application of state law was possible under the programs at issue. *Kimbell Foods,* 440 U.S. at 728-29 (adopting state rule of priority for individualized Farmer's Home Administration and Small Business Administration loan priority disputes).

Shortly after *Kimbell Foods* was decided, the Ninth Circuit decided *Rust v. Johnson*, which involved an attempt to extinguish a federal interest obtained through a nationwide federal home lending program. In *Rust*, the City of Los Angeles attempted to foreclose on a property in which the Federal National Mortgage Association ("FNMA") had a mortgage interest. The city argued that foreclosure was appropriate under a California law allowing non-judicial foreclosure to satisfy its delinquent special

assessment for street and lighting improvements, and that it could convey absolute title after the sale. *Rust*, 597 F.2d at 180.

The *Rust* court did not take any issue with the validity or priority of the lien, but held that "the real issue in the lawsuit" and the crux of its decision "is that under federal law the improvement lien cannot be enforced without protecting the federal interest." *Id*. According to the court, the Constitution does not permit the federal lien to be extinguished by foreclosure because "[s]tate legislation must yield under the supremacy clause of the Constitution to the interests of the federal government when the legislation as applied interferes with the federal purpose or operates to impede or condition the implementation of federal policies and programs." *Id*. at 179.

The *Rust* court determined that extinguishment of the federal interest under the state foreclosure scheme "would run the risk of substantially impairing the Government's participation in the home mortgage market and of defeating the purpose of the National Housing Act." *Id.* The court noted that Congress had given no indication of intent to have state law govern FNMA's interest. Further, FNMA was not a party to the original contract, and it did not participate in individual negotiations of specifically tailored loans such that it could accommodate varying state laws. *Id*. at 180. Thus, the result in *Rust* was different from, but consistent with, the result in *Kimbell Foods. See Kimbell Foods,* 440 U.S. at 728-29 (state rules apply to negotiated, tailored SBA and Farmers Home Administration loans because "each application currently receives individual scrutiny [and] the agencies can readily adjust loan transactions to reflect state priority rules" and because programs indicated a congressional intent to be governed by state law); *see also Chi. Title Ins. Co. v. Sherred Vill. Assoc.*, 708 F.2d 804, 810 (1st Cir. 1983) (adopting state rule to determine HUD's interest in relation to a mechanic's lien where HUD insured construction project pursuant to a program where "each application already receives extensive individual scrutiny").

.  .  .

.  .  .

.  .  .

### 3.  <u>Properties in which HUD has an interest are not subject to non-judicial foreclosure of a delinquent HOA assessment lien.</u>

The analysis in *Rust* and *Kimbell Foods* has been applied in two closely related cases where an HOA sought non-judicial foreclosure of a property where the United States obtained an interest through national programs designed to insure mortgages for underserved groups.  *See Yunis v. United States*, 118 F. Supp. 2d 1024, 1028-29 (C.D. Cal. 2000) (VA lending program) and *Sec'y of Hous. and Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970 (C.D. Cal. 2000) (HUD lending program).[2]

In *Sky Meadow,* HUD insured a home loan between a private lender and a borrower under the Single Family Mortgage Insurance Program.  *Id*. After default, HUD obtained title to the property.  The HOA recorded a Notice of Delinquent Assessment and eventually sold the property to the HOA's president at a non-judicial sale for $1,500.00.  *Id*. The property was sold again for $63,000.00.  *Id*. HUD filed a quiet title suit, and argued that the non-judicial foreclosure sale could not eliminate its interest. *Id*.

The HOA argued that *Rust's* requirement of protecting a federal interest in a property did not apply because the City of Los Angeles – a governmental entity – initiated the foreclosure sale.  The HOA argued that "even though a state or local government cannot 'convey absolute title in derogation of the federal interest,' a private homeowners association can do so when it non-judicially forecloses on the federal government's interest in the property."  *Id*., quoting *Rust* at 179.  The district court flatly rejected this argument.  The court held that allowing an HOA to do what the City of Los Angeles could not was not tenable.  "In order for a state or a private party to proceed in such a manner there must be express congressional approval."  *Id*. at 977.

The *Sky Meadow* court then applied the analysis of *Rust* and *Kimbell Foods* to determine that the non-judicial foreclosure was invalid.  First, it determined that a uniform law was desirable because, although Congress had not expressly spoken on whether a California non-judicial foreclosure of an HOA assessment lien could divest the government of property obtained under the statutory scheme: "It is doubtful, here, that Congress in enacting the Single Family Mortgage Insurance Program, intending

---

[2] The same district court issued these decisions on the same day and the opinions are nearly identical.

'the outcome to depend upon varying characterizations of state law.'" *Sky Meadow*, 117 F. Supp. 2d at 976, citing *United States v. Lewis Cnty.*, 175 F.3d 671, 677 (9th Cir.1999), *cert. denied* 528 U.S. 1018 (1999) (state law did not control determination of property taxes on land obtained through Farm Services Agency lending program).

The *Sky Meadow* court next determined that "a foreclosure sale of HUD's property will frustrate the purpose of the program, i.e. to insure home loans extended by private lenders to enable low to moderate income buyers to purchase a home." *Id*.  The court noted that "[i]f HUD is circumscribed in its ability to replenish the Mutual Mortgage Insurance Fund, then its ability to facilitate home ownership by eligible individuals is limited" and that "application of state law as the federal rule of decision would interfere with the statutory mission of HUD." *Id*. at 980-81.

Finally, the court noted "that [the HOA] could have sued the United States under the 'sue and be sued' clause found in the statute and collected the past due assessment fees." *Id*. at 979, citing 12 U.S.C. § 1702.  This ability to sue for delinquent assessments prevented undue disruption of the HOA's commercial activity.  The court noted that the HOA was unlike the creditors in *Kimbell Foods*, who "had no ability to sue the government to collect their debts, if the federal government's liens rendered the creditor liens less valuable." *Id*.

After determining that federal law applied and that the state rule of decision should not be adopted, the court held that the non-judicial foreclosure could not have divested HUD's property interest because "Congress has stated that the Secretary of HUD must dispose of HUD owned property in a manner that expands home ownership opportunities, strengthens neighborhoods and communities, and ensures a maximum return to the mortgage insurance fund." *Id*. at 981, citing 24 C.F.R. § 291.1(a)(2).

### 4.  **This Court should not adopt state law as the federal rule of decision.**

Because there is no specific congressional directive on the disposition of HUD's lien on the Property, the Court must determine whether it should adopt the state rule of decision.  Plaintiff's Complaint depends on this Court not only adopting Nevada law as the federal rule of decision, but also on it adopting Plaintiff's problematic interpretation of NRS 116.3116.

In *Rust* and *Kimbell Foods*, the courts considered several factors in determining whether federal courts should adopt a state rule of decision to govern federal programs.  The courts considered (1) congressional intent to have state law govern the federal interest; (2) whether the interest was obtained through a program that allows loans to be individually tailored; (3) whether there is a need for a nationally uniform body of law; and (4) "the extent to which application of a federal rule would disrupt commercial relationships predicated on state law."  *Kimbell Foods*, 440 U.S. at 728-29; *Rust*, 597 F.2d at 180.

### a.  Congressional intent to have state law govern the federal program

Where Congress has not expressed intent to have state law govern the federal program, courts should adopt a rule that protects the federal interest.  *Rust,* 597 F.2d at 180 ("This is not a case where Congress has allowed the federal interest to be subject to state law.").  Congress has not indicated intent that state law govern HUD's HECM program.  *See generally* 24 C.F.R. § 206.1.

### b.  Interest obtained through individually tailored loans

Courts should adopt a federal rule of decision protecting federal interests obtained through programs that do not include individual loan negotiation and tailoring.  *Rust*, 597 F.2d at 180 ("FNMA … has little or no contact with its mortgagors and it does not individually negotiate the mortgage contracts it receives.").

HUD does not negotiate insurance arrangements with individual mortgagors when insuring single-family residential loans.  *See generally* 24 C.F.R. § 206.1.  Under the HECM program, HUD insures mortgages issued by approved mortgagees in compliance with national standards, and does not individually tailor or negotiate the underlying.  *Id*.

### c.  A nationally uniform body of law is necessary

Much like the programs in *Rust*, *Sky Meadow*, and *Yunis*, the underlying loan at issue in this case was insured through a nationwide program for insuring home mortgages for underserved borrowers.  As of 2011, HUD's HECM program insures more than 580,000 properties nationwide.  *See* Report to

10

1   Congress on Reverse Mortgages, June 2012,[3] at p.14.

2       The HECM program is a national loan insurance program similar to the FNMA insurance

3   program at issue in *Rust,* and closely related to the Single Family Mortgage Insurance Program at issue

4   in *Sky Meadow* (where the court held federal property should not be subject to varying characterizations

5   of state law).  In fact, both HECM and the Single Family Mortgage Insurance Program are underwritten

6   by the same insurance fund.  Accordingly, as in *Rust* and *Sky Meadow,* there is a compelling need for a

7   nationally uniform body of law governing extinguishment of HUD's interest obtained through the

8   program.

9           ***d. Application of state law would frustrate the specific objectives of the HECM
            program***

10

11      Pursuant to the National Housing Act, HUD's HECM program is designed:

12          (1) to meet the special needs of elderly homeowners by reducing the effect of the
            economic hardship caused by the increasing costs of meeting health, housing, and
13          subsistence needs at a time of reduced income, through the insurance of home equity
            conversion mortgages to permit the conversion of a portion of accumulated home
14          equity into liquid assets; and

15          (2) to encourage and increase the involvement of mortgagees and participants in the
            mortgage markets in the making and servicing of home equity conversion mortgages
16          for elderly homeowners.

17   12 U.S.C. § 1715z–20(b)(1); 24 C.F.R. § 206.33.

18      The HECM program makes lending to elderly homeowners more attractive by insulating lenders

19   from risk. *See* 12 U.S.C. § 1715z–20(a).  The Mutual Mortgage Insurance fund, which underwrites the

20   HECM program, is under severe stress.  *See* Annual Report to Congress Fiscal Year 2012 Financial

21   Status FHA Mutual Mortgage Insurance Fund, November 16, 2012,[4] at p. 8).

22      Adopting Plaintiff's interpretation of NRS 116.3116 would severely frustrate the objectives of

23   the HECM program by preventing HUD from replenishing the Mutual Mortgage Insurance fund and,

24   like the attempt to extinguish the government's lien in *Rust,* "run the risk of substantially impairing the

25

26   _____
     [3]Available at http://files.consumerfinance.gov/a/assets/documents/201206_cfpb_Reverse_Mortgage_Report.pdf .
     [4] http://portal.hud.gov/hudportal/HUD?src=/press/press_releases_media_advisories/2012/HUDNo.12-171.

Government's participation in the home mortgage market and … defeat[] the purpose of the National Housing Act." *Rust*, 597 F.2d at 179.

> ### e. Application of a federal rule would not disrupt commercial relationships predicated on state law

The HOA's Assessment Lien on the Property was $6,039.70 and Plaintiff paid $10,600.00 for the Property.  HUD's first security interest on the Property is $307,774.32.  Under Plaintiff's interpretation of state law, it could obtain clear title to the Property for approximately 3% of its value, while the already beleaguered Mutual Mortgage Insurance fund suffered a massive loss.  Even if state law provided for such an unreasonable outcome, this Court should not adopt it as the federal rule of decision.

Federal law governs in this case and the Court is entitled to select an appropriate rule of decision. The Court should not adopt Plaintiff's interpretation of NRS 116.3116 as the rule of decision in this case.

### 5.   The Court should adopt a rule that requires judicial sale.

Since a federal rule is appropriate in this situation, the Court must "fashion the governing rule of law according to [its] own standards." *Kimbell Foods,* 440 U.S. at 726-27.  Where the conflict between federal interests and the operation of state law is relatively narrow, courts may decide "only particular elements of state law are superseded." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 508 (1988) (citing *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 595, (1973)).  *Rust* followed this narrow approach:  "We are not concerned with the authority of the City to make the assessment or with the priority under state law of the street improvement lien…. What we have decided is that under federal law the improvement lien cannot be enforced without protecting the federal interest." *Rust,* 597 F.2d at 180.

When crafting the federal rule of decision, a court may look to analogous federal statutes. *Seagate Tech. LLC. v. Dalian China Exp. Int'l Corp. Ltd.*, 169 F. Supp. 2d 1137, 1142 (N.D. Cal. 2001) (citing 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, §

4518) (discussing the inquiry federal courts must make in determining the content of federal common law).  A closely analogous federal statute supplies a clear rule of decision that this Court should adopt.

28 U.S.C. § 2410 provides a limited waiver of sovereign immunity and allows the United States to be named in suits to, *inter alia*, foreclose a lien on or quiet title to property on which the United States has a lien.  This statute mandates that "an action to foreclose a mortgage or other lien, naming the United States as a party under this section, *must seek judicial sale*." 28 U.S.C. § 2410(c) (emphasis added).

This Court should adopt a federal rule of decision that prevents an HOA from extinguishing a lien obtained through HUD's HECM program without judicial sale.  This federal rule of decision is entirely consistent with a majority of state law cases holding that when an HOA initiates "a non-judicial foreclosure [under NRS 116.3116] to recover delinquent assessments . . . the purchaser at the sale takes the property subject to the [first] security interest."  *Diakonos Holdings, LLC v. Countrywide Home Loans, Inc.*, No. 2:12-CV-00949-KJD, 2013 WL 531092 (D. Nev. Feb. 11, 2013); see also *SFR Investments Pool 1, LLC v. DHI Mortg. Co., Ltd.*, 2013 WL 5778527 (Nev. Dist. Ct.) (Trial Order) (NRS 116.3116(2) "specifies the association's lien is junior to the first security interest at least until an "action" is commenced.").

A rule that HUD's lien on the Property cannot be extinguished without a judicial sale is consistent with existing federal and state law, adequately protects the federal interest as required by *Rust*, and preserves the HOA's assessment lien.  Application of this federal rule leads to just results. The HOA lien purchaser will not reap an inordinate windfall, HOAs can collect past due fees and the HECM program will serve its intended purpose of helping elderly Americans. Applying the state rule as interpreted by Plaintiff would result only in Plaintiff's unjust enrichment.

**B.    PLAINTIFF CANNOT QUIET TITLE IN ITS FAVOR BECAUSE IT TOOK THE PROPERTY SUBJECT TO HUD'S FIRST SECURITY INTEREST**

The Court should dismiss Plaintiff's Complaint for quiet title because the plain and unambiguous language of NRS 116.3116 states that non-judicial foreclosure of an HOA assessment lien does not

extinguish the first security interest, because the HOA never perfected its security interest by initiating

an action, and because Plaintiff does not plead that the HOA's lien precedes the deed of trust.

### 1.  Foreclosure of an assessment lien created by NRS 116.3116 does not extinguish HUD's Deed of Trust.

Nevada has enacted a statutory scheme that gives HOAs "immediate liens against real property

when HOA assessments or other costs against a unit become delinquent." *Bayview Loan Servicing, LLC*

*v. Alessi & Koenig, LLC,*  No. 2:13–CV–00164–RCJ, 2013 WL 2460452 at *3 (D. Nev. June 6, 2013),

*reconsideration denied* 2013 WL 3943915 (D. Nev. July 8, 2013).  NRS 116.3116 provides that an

HOA lien is prior to all other liens and encumbrances.  However, the statute carves out an important

exception to the HOA lien's priority for "a first security interest on the unit recorded before the date on

which the assessment sought to be enforced became delinquent...."  NRS 116.3116(2)(b).

The exception in subpart (2)(b), preserving the priority of the first security interest, has one

caveat: the HOA assessment lien has limited super priority over the first security interest "to the extent

of any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the

assessments for common expenses based on the periodic budget adopted by the association pursuant to

NRS 116.3115, which would have become due in the absence of acceleration during the 9 months

immediately preceding institution of an action to enforce the lien...." [5]  NRS 116.3116(2)(c).

### 2.  An HOA non-judicial foreclosure is not an "action" giving rise to a super-priority lien.

The language of the statute creating the HOA's super-priority lien for nine months of

assessments is clear: the nine-month portion of the HOA lien attains super-priority upon the "institution

of action to enforce the lien."  *See* NRS 116.3116(2)(c).  Statutory terms are generally interpreted

according to their ordinary meaning unless otherwise defined in the statute.  *Perrin v. United States*, 444

U.S. 37, 42 (1979).  The term "action" in the ordinary sense means to file or bring a lawsuit.  *See, e.g.*,

---

[5] Section 116.310312 concerns HOA fines and costs imposed when an HOA must maintain the exterior of a unit in accordance with the CC & R or remove or abate a public nuisance on the exterior of the unit where the unit owner has failed to do so.  *See id.* § 116.310312(2). Section 116.3115 governs regular HOA dues. *See id.* § 116.3115.

Fed. R. Civ. P. 2 and 3; *see also Seaborn v. First Judicial Dist. Court*, 29 P.2d 500, 505 (Nev. 1934) ("An 'action' is a judicial proceeding, either in law or equity, to obtain certain relief at hands of court"); *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006) ("The key terms in this provision – 'action' and 'complaint' – are ordinarily used in connection with judicial, not administrative, proceedings"); Black's Law Dictionary (8th ed. 2004) (the phrase "bring an action" is defined as "to sue; institute legal proceedings").

Other portions of NRS 116.3116 use "action" to mean a judicial proceeding. Specifically, NRS 116.3116(7) states "[a] judgment or decree in any **action** under this section must include costs and reasonable attorney's fees for the prevailing party." (emphasis added). Similarly, NRS 116.3116(10) provides that "[i]n an **action** by an association to collect assessments or to foreclose a lien created under this section, the court may appoint a receiver to collect all rents or other income from the unit alleged to be due and owing to a unit's owner before commencement or during pendency of the action." (emphasis added). The plain meaning and the context of the term "action" under NRS 116.3116 therefore means to commence or institute a lawsuit or judicial action.

Consistent with the plain language of the statute, several Nevada courts have held that NRS 116.3116 requires the HOA to commence a judicial action to establish the super-priority portion of its lien. *See, e.g., SFR Inv. Pool 1, LLC v. DHI Mortg. Co., Ltd.*, No. 12A675799, 2013 WL 5778527 (Dist. Ct. Nev. Sept. 13, 2013) (Trial Order ); *SFR Inv. Pool 1, LLC v. Nat'l City Bank*, No. 13A676349, 2013 WL 5778584 (Dist. Ct. Nev. Sept. 25, 2013 ) (Trial Order ); *Paradise Harbor Place Trust v. Selene Fin., LP*, No. 13A675032, 2013 WL 5778547 (Dist. Ct. Nev. Sept. 13, 2013) (Trial Order ).

When the HOA initiates "a non-judicial foreclosure to recover delinquent assessments . . . the purchaser at the sale takes the property subject to the [first] security interest." *See Diakonos Holdings*, 2013 WL 531092. In this case, Plaintiff obtained its title after the HOA sold the Property at a non-judicial foreclosure sale based on the lien granted it by NRS 116.3116(1). The express terms of NRS 116.3116(2)(b) preserve the seniority of HUD's first security interest for all purposes unless there is an "action to enforce the lien." Because the HOA never commenced an action, the nine-month portion of

1  the HOA's lien never obtained super-priority and HUD's first security interest is not disturbed.

2  Accordingly, Plaintiff's claim to quiet title fails as a matter of law.

### 3.  Plaintiff fails to state a claim because Nevada courts have repeatedly held that foreclosure of an assessment lien does not extinguish the first security interest.

5          Plaintiff's claim to quiet title and other relief is entirely dependent on its assertion that the

6  HOA's foreclosure on its Assessment Lien extinguished HUD's Deed of Trust.  The majority of federal

7  courts that have dealt with this question have held that non-judicial foreclosure of an HOA lien does not

8  extinguish the first security interest.  *Premier One Holdings, Inc. v. BAC Home Loans Servicing LP,* No.

9  2:13-CV-895-JCM-GWF, 2013 WL 4048573 at *3 (citing *Diakonos Holdings,* 2013 WL 531092);

10 *Beverly v. Weaver-Farley,* 3:13-CV-0348-LRH-VPC, 2013 WL 5592332 (D. Nev. Oct. 9, 2013);

11 *Bayview Loan Servicing*, 2013 WL 2460452; *Weeping Hollow Ave. Trust v. Spencer,* No. 2:13–CV–

12 00544–JCM, 2013 WL 2296313 (D. Nev. May 24, 2013); *Kal–Mor–USA, LLC v. Bank of America,*

13 *N.A.*, No. 2:13–CV–0680–LDG, 2013 WL 3729849 (D. Nev. July 8, 2013) (denying preliminary

14 injunction and granting dismissal and summary judgment); *First 100, LLC v. Wells Fargo Bank, N.A.*,

15 No. 2:13–CV–431–JCM, ECF 29 (D. Nev April 30, 2013) (denying motion for temporary restraining

16 order).  *But see* S*FR Inv. Pool 1, LLC v. Wells Fargo Bank, N.A.*, No. 2:13–CV–01153–APG, ECF 32

17 (D. Nev. July 25, 2013) (granting a preliminary injunction in favor of the HOA); *7912 Limbwood Court*

18 *Trust v. Wells Fargo Bank, N.A.,* 2:13-CV-00506-PMP, 2013 WL 5780793 (D. Nev. Oct. 28, 2013)

19 (denying a motion to dismiss filed by the first security interest holder).

20          *Premier One Holdings* is typical of these decisions.  There, the defendant held a deed of trust

21 securing a delinquent note for $305,000.00.  Plaintiff bought the property at an HOA foreclosure sale for

22 $13,700.00 and sued to quiet title in its favor, arguing that NRS 116.3116 operated to extinguish

23 defendant's deed of trust.  The court (Mahan, J.) held that "the plain and clear meaning of the statute is

24 that it affords an HOA a super priority lien of nine months of delinquent assessments, but nothing more

25 than that."  *Premier One Holdings,* 2013 WL 4048573 at *3.  The court further held that "to construe

26 NRS 116.3116 to permit an HOA foreclosure to extinguish a first position deed of trust would be an

absurd result." *Id*. at *4.  The court noted that such an interpretation is impractical and potentially

violates due process because an HOA assessment is usually a small amount compared to the note and

usually arises long after the note is recorded.  *Id*.  The court also noted that such an interpretation would

unjustly favor the party with the least risk, would pressure banks to foreclose at the first sign of distress,

and could ultimately lead to a serious reduction in lending.  *Id*.

State courts have likewise repeatedly rejected Plaintiff's argument.  *Id*. at *3 ("most state courts

have agreed with the interpretation of the federal courts"); *see, e.g., Order Den. Mot. for Prelim. Inj.,*

*Oliver Sage Drive Trust v. BAC Home Loan Servicing LP*, No. A-13-674872-C (Dist. Ct. Nev. Mar. 28,

2013) (holding that buyer at a foreclosure for delinquent common homeowners association assessments

purchases a possessory right to the property subject to a first security interest) (ECF 8, Ex. B); *Order*

*Den. Mot. for Prelim. Inj. and Granting Counter-Mot. to Dismiss, SFR Investments Pool 1, LLC v. US*

*Bank, N.A.*, No. A-12-673671-C (Dist. Ct. Nev. Mar. 22, 2013) (noting that both state and federal

constitutional due process guarantees offended if first security interest may be voided by non-judicial

foreclosure for an assessment lien and holding that only a judicial foreclosure may extinguish a first

security interest) (ECF 8, Ex. C); *Order Den. Mot. for Prelim. Inj., SFR Investments Pool 1, LLC v. First*

*Horizon Home Loans*, No. A-13-674958-C (Dist. Ct. Nev. May 15, 2013) (denying SFR Investment's

motion for a preliminary injunction on arguments concerning extinguishing first deed of trust security

interest at association foreclosure sale for delinquent common assessments) (ECF 8, Ex. D); *Order*

*Granting Mot. to Dismiss Compl. and Cross-Compl., French v. Sweetwater Homeowners Ass'n, Inc.,*

No. A-12-667931-C (Dist. Ct. Nev. Apr. 26, 2013) (granting motion to dismiss SFR Investment's

crosscomplaint and holding judicial foreclosure necessary to extinguish a first deed of trust at a

foreclosure sale for delinquent common homeowners association assessments) (ECF 8, Exh. E). By

contrast, Plaintiff does not cite, and HUD has not found, any case where a court has quieted title in favor

of a party based on an assertion that an NRS 116.3116 assessment lien extinguished a prior recorded

deed of trust, although some judges in state court have granted preliminary injunctions or refused to

dismiss quiet title actions based on this claim.  *See, e.g., First 100, LLC, v. Burns,* No. A-13-677693-C

(Dist. Ct. Nev. May 31, 2013) (denying motion to dismiss) (ECF 8, Ex. F); *Premier One Holdings,* 2013 WL 4048573 at *3 (acknowledging contrary state court opinions).

Plaintiff's claim to quiet title depends on an interpretation of NRS 116.3116 that extinguishes the first security interest.  In its Complaint, Plaintiff acknowledges that HUD has a first security interest.  There is no dispute that HUD's interest is covered by the exception to the priority of an assessment lien for first security interest as reflected in subpart (2)(b).  Therefore, for Plaintiff's claim to succeed, the caveat to the exception – the super-priority portion for nine months of delinquent assessments provided in subparagraph 2(c) – must operate to extinguish the first security interest protected by the original exception.  This interpretation of NRS 116.3116 would render the exception meaningless.  *See Bayview Loan Servicing,* 2013 WL 2460452 at *5 (allowing super priority exception to extinguish lien would render first security interest exception meaningless).  Accordingly, Plaintiff is unable to state a legally cognizable claim that NRS 116.3116 extinguishes HUD's lien, and the Complaint should be dismissed.

### 4.  <u>The Court should dismiss Plaintiff's complaint because the assessment lien was not recorded before the Deed of Trust.</u>

A plaintiff seeking to quiet title obtained through foreclosure of an HOA assessment lien must allege that the assessment lien chronologically precedes the recording of the deed of trust.  *Centeno v. Mortgage Elec. Registration Sys.*, No. 2:11–CV–02105–GMN, 2012 WL 3730528 at *3 (D. Nev. Aug. 28, 2012) (dismissing claim that an '"HOA Trustee Sale' occurred 'in favor of plaintiff,' which 'has cancelled or wiped out'" a defendant's Deed of Trust); *see also Kal-Mor-USA, L.L.C.*, 2013 WL 3729849 (HOA foreclosure did not extinguish first security interest because deed of trust was recorded almost seven years prior to NRS 116.3116 assessment lien).  Without that allegation, a plaintiff cannot state a claim for quiet title because NRS 116.3116(2)(b) expressly says that an assessment lien recorded by an HOA subsequent in time to the deed of trust only creates a super priority lien for nine months of assessments.  NRS 116.3116(2)(3).  *Id. citing Centeno,* 2012 WL 3730528 at *3; *see also Weeping Hollow Ave. Trust*, 2013 WL 2296313, at *5 (denying motion for temporary restraining order and dismissing quiet title claim because Plaintiff could not allege in good faith that assessment lien predated

1    deed of trust).

2          The Assessment Lien on the Property was recorded in October, 2012, more than seven years

3    after HUD's Deed of Trust was recorded.  Plaintiff fails to allege in the Complaint that the Assessment

4    Lien on the Property predates the Deed of Trust.  Plaintiff's claim to quiet title does not meet the

5    standard of plausible pleading required to survive a motion to dismiss. *Centeno*, 2012 WL 3730528 at

6    *3.

7    **V.    CONCLUSION**

8          Plaintiff's Complaint asks this Court to determine that the non-judicial foreclosure of the HOA

9    assessment lien extinguished HUD's first security interest.  Because HUD is a federal entity governed

10   by federal law, however, this Court must adopt a federal rule of decision that protects the federal

11   interest.  Further, even under state law, Plaintiff fails to state a claim because the plain language of NRS

12   116.3116 preserves the first security interest after a non-judicial foreclosure of an HOA lien.

13         Accordingly, HUD requests that the Complaint be dismissed.

14         Respectfully submitted this 3rd day of February 2014.

15                                                         DANIEL G. BOGDEN
                                                           United States Attorney
16

17                                                           */s/ Troy K. Flake*
                                                           TROY K. FLAKE
18                                                         Assistant United States Attorney

19

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**PROOF OF SERVICE**

I, Troy K. Flake, certify that the following individual was served with copies of **MOTION TO DISMISS** on February 3,2014, by the below identified method of service:

CM/ECF:

Aaron R. Dean, Esq.
THE DEAN LEGAL GROUP, LTD.
612 S. 10th Street
Las Vegas, NV 89101

　　　　　　　　　　　　　　　　　　 */s/ Troy K. Flake*
　　　　　　　　　　　　　　　　　　TROY K. FLAKE
　　　　　　　　　　　　　　　　　　Assistant United States Attorney