AARON R. DEAN, ESQ.
Nevada Bar #9541
THE DEAN LEGAL GROUP, LTD.
612 S. 10th Street
Las Vegas, Nevada 89101
Tele: (702) 823-1354
Fax:  (702) 823-2368
E-mail: adean@deanlegalgroup.com
Attorney for *Collegium Fund, LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

COLLEGIUM FUND, LLC, SERIES 5, a Nevada limited liability company,

              Plaintiff,

vs.

WELLS FARGO BANK, NA; HOUSING AND URBAN DEVELOPMENT; ADELE KADANS; DOROTHY L. KEMP; DONALD R. KEMP; RAFAEL GIRALDO; LEONA MARTIN; and DOES I through X, inclusive,

              Defendants.

Case No.: **2:13-cv-01550-GMN-VCF**

## RESPONSE/OPPOSITION TO MOTION TO DISMISS

Plaintiff, COLLEGIUM FUND, LLC, SERIES 5 ("Collegium"), by and through its attorneys with The Dean Legal Group, Ltd., hereby submits its Response/Opposition to the Motion to Dismiss filed by Defendant HOUSING AND URBAN DEVELOPMENT ("HUD"), (ECF #50).

///

///

///

-1-

This Response/Opposition is made and based on the papers and pleadings on file herein, the Points and Authorities submitted herewith, the affidavits and exhibits attached hereto, and the oral argument of counsel, if any, at the time set for the hearing of this matter.

DATED this 28th day of February, 2013.

THE DEAN LEGAL GROUP, LTD.

By /s/ Aaron R. Dean
AARON R. DEAN, ESQ.
Nevada Bar #9541
612 S. 10th Street
Las Vegas, Nevada 89101
Tele: (702) 823-1354
Fax: (702) 823-2368
Attorney for *Collegium Fund, LLC*

## POINTS AND AUTHORITIES

### I.  STATEMENT OF FACTS.

This action involves the property located at 324 Wild Plum Lane, Las Vegas, Nevada 89107; further described as APN 138-36-610-025.  The Property is currently owned by the Plaintiff who succeeded to title by being the highest and successful bidder at a Homeowners Association Foreclosure Sale which was conducted pursuant to Nevada Revised Statute ("NRS") Chapter 116.  **Exhibit 1.**  HUD has allegedly taken an interest in the Property based on a deed of trust[1]  recorded against the Property on or about January 1, 2005 ("DOT") **Exhibit 2,** which it appears to claim an interest in based on a document titled "Assignment of Deed of Trust and Other Loan Documents" which was recorded on September 3, 2008, in the Clark County Recorder's Office, **Exhibit 3**.

Apparently, the prior owners failed to comply the obligations set forth in the DOT and based on the non-performance, the HUD Respondent as the beneficiary of the DOT, initiated a non-judicial foreclosure action against the Property.  The HUD Respondent, through its agent, caused a notice of default and notice of trustee's sale to be recorded against the Property on or

---

[1] At about the same time the DOT was signed, a Planned Unit Development Rider was also executed which evidences the HUD Respondent's knowledge of the planned unit development status of the Property and the existence of a Homeowners Association as well as the recordation of Covenants, Conditions and Restrictions recorded against same. **Exhibit 4.**

about June 18, 2013. **Exhibit 5**. At the same time, the prior owner was failing to perform the obligations required by the DOT, and the prior owner was also failing or otherwise refusing to pay the monthly payments and/or assessments to the homeowners association ("HOA") where the Property was located. Based on the failure to pay the monthly payments and/or assessments, the HOA commenced foreclosure proceedings as allowed for by NRS Chapter 116 and recorded a Notice of Delinquent Assessment Lien ("HOA Lien"), Notice of Default and Election to Sell and Notice of Trustee's Sale against the Property. **Exhibits 6, 7 and 8**. As a result of the failure to pay the amount owed to the HOA, on or about July 12, 2013, the HOA sold the Property at a HOA Lien foreclosure sale in accordance with NRS 116.3116 through 116.31168, inclusive.

Plaintiff was the successful bidder at the HOA Lien foreclosure sale and subsequently recorded the deed evidencing the transfer. **Exhibit 1**. Plaintiff learned HUD was attempting to foreclose on the DOT recorded against the Property; which was set to occur on August 13, 2013. In an effort to halt the sale and to eventually obtain marketable title and proper title insurance, Plaintiff filed an action in state court on August 6, 2013, to quiet title the property in Plaintiff's name and prevent the August 13, 2013, sale by HUD. In conjunction with the complaint, Plaintiff further requested the state court issue a temporary restraining order halting the original sale and to hold a hearing on a motion for preliminary injunction on the issue of whether HUD should be prevented from foreclosing on its interest recorded against the Property during the pendency of the action.

The state court granted the temporary restraining order, and prior to the hearing on the motion for preliminary injunction, the HUD Respondent removed the state court action to the District Court. (ECF #1). This Court ultimately denied the Plaintiffs motion for preliminary injunction and vacated the temporary restraining order (ECF #13); thereby allowing HUD to continue with the foreclosure action. The order from the Court denying the motion for preliminary injunction was appealed (ECF #17 and #19), and the Ninth Circuit has issued an order preventing HUD from continuing with foreclosure efforts during the pendency of the appeal (ECF #46). HUD's current motion seeking dismissal followed.

1  **I.      RELEVANT LEGAL AUTHORITY.**

2       The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on

3  its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Therefore, and as

4  a threshold matter, it is important to note that at the pleading stage, the burden needed to survive a

5  motion to dismiss is merely to *allege* the facts supporting the elements of the complaint, the

6  burden does not require the non-moving party to prove them. Under the federal court system's

7  notice pleading rules, a complaint must provide "a short and plain statement of the claim showing

8  that the pleader is entitled to relief." F.R.C.P. 8. Therefore, "[t]o survive a motion to dismiss, a

9  complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

10  plausible on its face.'" *Lacey v. Maricopa County*, 693 F.3d 896, 911 (9th Cir. 2012) (quoting

11  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

12       The standard review for dismissal in subsection F.R.C.P. 12(b)(6) is rigorous, as a court

13  must accept "all factual allegations in the complaint as true and constru[e] them in the light most

14  favorable to the non-moving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014

15  (9th Cir. 2012); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012). A complaint

16  does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to

17  relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th

18  Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167

19  al as it states "[t; *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868

20  (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that

21  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

22  alleged").

23       Motions to dismiss for failure to state a claim under F.R.C.P. 12(b)(6) are viewed with

24  disfavor, and, accordingly, dismissals for failure to state a claim are "rarely granted." *Gilligan v.*

25  *Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). A court may not dismiss a

26  complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

27  his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

28  Finally, leave to amend is should be granted unless it is clear that the deficiencies of the complaint

1   cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th

2   Cir. 1992).

3   **II.    ARGUMENT.**

4   **A.    ANY FEDERAL RULE ADOPTED SHOULD BE THE EXISTING STAUTORY**
    **SCHEME AND NO NEW RULE IS REQUIRED.**

5

6       1. **The cases cited by HUD clearly distinguishable from the current case.**

7       HUD references *Yunis v. United States*, 118 F. Supp. 2d 1024, 1028-29 (C.D. Cal. 2000)

8   (VA lending program), and relies heavily on *Sec'y of Hous. and Urban Dev. v. Sky Meadow Ass'n*,

9   117 F. Supp. 2d 970 (C.D. Cal. 2000) (HUD lending program).    However, these cases are

10  inapposite to the current case as in both *Sky Meadows* and *Yunis*, the relevant government agencies

11  held title to the property and not merely a security interest in the property.  In fact, the Court in *Sky*

12  *Meadow* specifically noted that lien priority under *Kimbell* was not this issue and instead noted

13  "we are concerned with the role of the government as a property owner and **_not whether its lien_**

14  **_rights should take precedent over other creditors._**  It is in this context that the court must decide

15  whether to apply federal or state law as the federal rule of decision." *Sky Meadow*, 117 F. Supp.

16  2d at 979 (emphasis added).   In fact, *Sky Meadow* recognize and cite *Kimbell, infra,* for the

17  proposition that state law applies when deciding which lien takes precedence.  *Id.*  Based on this

18  language alone, the analysis and holdings of *Sky Meadow* and *Yunnis* are inapplicable to the case

19  at bar; since the current case deals with lien priority.

20      HUD also cites *Rust v. Johnson*, 597 F.2d 174, 177 (9th Cir. 1979).  However, the Court in

21  *Rust* was dealing with FNMA and specifically noted it acted as a secondary market for loans as a

22  buyer of mortgages.  However, HUD is not a secondary market facility and is not a purchaser of

23  loans; in this setting it is a guarantor similar to the SBA in *Kimbell, infra.*   The Court should

24  therefore not rely on these cases when making its decision.

25      2. **Lien priority, and therefore this case, should be based on State law.**

26      Admittedly, and as HUD will assuredly agree, there is no federal statutory scheme and no

27  uniform body of federal law which is decisive on the issue of whether HUD's interest takes

28  priority over Plaintiff's interest and vice versa.  The court in *Clearfield Trust* instructs that "[i]n

1 absence of an applicable act of Congress it is for the federal courts to fashion the governing rule of

2 law according to their own standards." *Clearfield Trust,* 318 U.S. at 367, 63 S.Ct. at 575. The

3 seminal case on lien priority in the scheme of how to adopt a federal rule of decision is *United*

4 *States v. Kimbell Foods*, 440 U.S. 715, 99 S.Ct. 1448 (1979). In fact, *Kimbell* and the case at bar

5 are so strikingly similar that *Kimbell* is dispositive to the current motion and warrants its denial.[2]

6       *Kimbell* involved two competing liens against the same property held by O.K. Super

7 Markets; with one lien being held by the Small Business Administration ("SBA") as a loan

8 guarantor[3] and the other by Kimbell which arose from security agreements that preceded the

9 federal guarantee.[4] *Kimbell*, 440 U.S. at 718-20, 99 S.Ct. at 1453. Kimbell later brought suit to

10 collect on a balance owed to it based on the security agreement. *Id.* Shortly after Kimbell filed

11 suit, O.K. Super Markets defaulted on the SBA guaranteed loan. O.K. Super Markets ultimately

12 sold all of its assets and placed same into an escrow account pending resolution of competing

13 claims to the funds, including the claims of Kimbell and the SBA. *Kimbell*, 440 U.S. at 21, 99

14 S.Ct. at 1454. The issue before the *Kimbell* court was to determine the priorities of the liens

15 relative to the funds in the escrow account. In conducting its analysis, the *Kimbell* court

16 determined that while federal law applied, there was no statutory authority governing the situation,

17 and while a federal rule was warranted, "the more difficult task" was "giving content to the federal

18 rule." *Kimbell*, 440 U.S. at 727, 99 S.Ct. at 1458. In response to the difficult task placed before it,

19 the *Kimball* court had to determine whether to adopt state law or fashion a national federal rule

20 relative to the lien priority issue.

21

22

---

[2] This case is a combination of two cases. In the first case, O.K. Super Market had two liens against its personal property. *Kimbell*, 440 U.S. at 718-20, 99 S.Ct. at 1453. The first lien on O.K. Super Market's property was held by a Kimbell. *Id.* O.K. Super Market obtained a loan through the Small Business Administration (SBA), under the SBA, and this is the basis for the second government lien. *Id.* The private lien preceded the government's lien. *Id.*

In the second case, Ralph Bridges, a farmer, obtained loans from the Farmers Home Administration (FHA) under the Consolidated Farmers Home Administration Act of 1961. *Id.* at 723. The FHA had a security interest in Bridges' property and farm equipment. *Id.* Bridges failed to pay for his tractor repairs. *Id.* The repairman kept the tractor and obtained a lien on it. *Id.* Bridges filed for bankruptcy and was discharged of his debts. *Id.* The United States brought a cause of action against the repairman for the tractor. *Id.* at 724. Neither the SBA nor the Consolidated Farmers Home Administration Act contained provisions dealing with the priority of liens. *Id.* at **723.**

Thus, the issue for the Court was whether a uniform federal law or state common law applied. *Id.* at **727.**

[3] The loan guaranteed by the SBA originated by Republic National Bank of Dallas and was assigned to the SBA after default by the borrower. *Kimbell*, 440 U.S. at 718-20, 99 S.Ct. at 1453.

[4] The loan and security agreement with Kimbell predated the loan and guarantee from the SBA.

HUD's attempts to identify the test under *Kimbell* of whether to adopt state law or fashion a national federal rule; however, the test espoused by HUD is incorrect. Mot. at 9-11. In making its determination, the *Kimbell* Court created a ***three part test***, not a four part test as cited by HUD. Under the three part test, a court must apply state law unless: (1) the issue, by its nature, requires uniform federal rules; (2) state law would frustrate the objective of the federal law; and (3) uniform federal rules would frustrate commercial relationships. *Kimbell Foods,* 440 U.S. at 728-29, 99 S.Ct. at 1459. This is the proper test under both *Kimbell* and the Ninth Circuit. *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1458 (9th Cir. 1986) (citing the *Kimbell* three part test above and ultimately determining state law should be adopted). Therefore, the four part test preferred by HUD should be disregarded entirely.

When conducting the three part test set forth in *Kimbell*, Supreme Court precedent both pre and post *Kimbell* suggests a strong inclination to adopt state law as the federal rule of decision when the federal statute is silent on a matter traditionally of state concern. This inclination, grounded in federalism, and reflects the principle that the federal courts may not intrude into the traditional domains of the states absent authorization from Congress. *See* W. Merrill, The Common Law Powers of Federal Courts, 52 U. CHI. L.REV. 1, 15-18 (1985); *cf. Atherton v. FDIC*, 519 U.S. 213, ___, 117 S.Ct. 666, 670, 136 L.Ed.2d 656 (1997) ("Whether latent federal power should be exercised to displace state law is primarily a decision for Congress, not the federal courts." (quotation omitted)); *see also, De Sylva v. Ballentine*, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956) (when determining whether an illegitimate child was included within the term "children" as used in the Copyright Act, 17 U.S.C. § 24, the court looked to "the ready-made body of state law" to define the term "children" after recognizing no federal law of domestic relations exists and that domestic relations is "primarily a matter of state concern); Atherton v. FDIC, 519 U.S. 213, ----, 117 S.Ct. 666, 670, 136 L.Ed.2d 656 (1997) (standard of care under

Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821, governing officers and directors of federally insured savings institutions must be defined by state law because state law traditionally governs corporate standards); *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 83-85, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) (refusing to create a special federal rule under FIRREA of imputation of knowledge of corporate officers because adopting a special federal common-law would divest states of authority over the entire law of imputation); *Columbia Gas Transmission*, 962 F.2d at 1198 (adopting state law as the federal standard for determining compensation under the eminent domain provision of the Natural Gas Act, 15 U.S.C. § 717f(h), because "**property rights have traditionally been ... defined in substantial part by state law**" (emphasis added)). "Thus, normally, when courts decide to fashion rules of federal common law, 'the guiding principle is that a significant conflict between some federal policy or interest and the use of state law ... must first be specifically shown.' " *Atherton*, 519 U.S.at ___, 117 S.Ct. at 670 (*quoting Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966). The significant conflict aspect is a precondition for recognition of a federal rule of decision. *See, e. g., Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 98 (1991). As set forth below, based on *Kimbell* and its progeny, Nevada law should control.

> ### i.  *Lien priority does not require a uniform federal rule.*

The court in *Kimbell* firmly declared, "incorporating state law to determine the rights of the United States as against private creditors would in no way hinder[s] administration of the SBA" *Kimbell*, 440 U.S. at 29-30, 99 S.Ct. at 1459. The court determined federal uniform body of law was *not required* since "compliance with state law would produce no hardship on the agency [due to] SBA's practice of "individually negotiat[ing] in painfully particularized detail" each loan transaction." *Id*. The court duly noted SBA employees were instructed to follow state law and that a fair reading of the SBA manual assumed its security interests would be governed by state

law. *Id.* Furthermore, the SBA used local lending offices with employees who were familiar with local laws and formalities; thereby functioning without uniform federal procedures. *Kimbell*, 440 U.S. at 32, 99 S.Ct. at 1460.

This case is identical to *Kimbell* in this regard. In *Kimbell*, O.K. Super Markets obtained a $300,000 loan from Republic National Bank of Dallas, which was ultimately guaranteed by the SBA. *Kimbell*, 440 U.S. at 719, 99 S.Ct. at 1453. Here, Defendant Kadans obtained a Home Equity Mortgage Conversion (HEMC or commonly referred to as a "reverse mortgage") from Defendant Wells Fargo Bank, NA, which was ultimately guaranteed by HUD. **Exhibit 2**. O.K. Super Markets defaulted on its SBA guaranteed loan, Republic National Bank of Dallas assigned its security interest to the SBA and recorded the assignment. *Kimbell*, 440 U.S. at 719, 99 S.Ct. at 1454. Here, Defendant Kadans defaulted on her obligations to Wells Fargo Bank, N.A., and it in turn assigned its interest to HUD **Exhibit 3**.

In addition, HUD cannot deny that each loan is specifically tailored to each borrower as in *Kimbell*. Federal Regulations require each loan comply with HUD's specific and detailed requirements including, *inter alia*, proper the age of the borrower, credit worthiness, title held by the property owner, as well as the and condition of the property. *See* 24 C.F.R. §§ 206.17-51. Therefore, since each loan is being reviewed and is based on HUD's guidelines and standards, it is evident that each loan HUD guarantees is in fact individualized and specific to each borrower.

In addition, HUD Handbook 4235.1 (similar the SBA's handbook in *Kimbell*), which involves HECM's further shows Nevada law should apply as it states the following:

> The validity and enforceability of the mortgage and note will depend on compliance with State law even if such law is not reflected in this handbook. For this reason, HUD emphasizes the need for a lender to use mortgages and notes that are in compliance with State law.

Exhibit 9 at §6-4 (emphasis added).

> Local HUD offices have authority to impose additional requirements regarding mortgage and note provisions for consistency with <u>State laws appropriate to their jurisdictions</u>, and to advise lenders of any such requirements through a Circular Letter.

Exhibit 9 at §6-5 (emphasis added).

> The lender is advised to seek counsel's opinions to assure that State law has been considered, and that any necessary changes to the model instruments are made. <u>The model instruments may require modification to comply with State laws</u>.

Exhibit 9 at §6-6 (emphasis added).  The application of Nevada law will in no way impede the administration of HUD.  Based on the above language, HUD appears to not only be involved in the lending process of each loan, it requires compliance with State law.  Furthermore, on the very first page of the very deed of trust HUD seeks to enforce, clearly states Nevada law governs the deed of trust.  **Exhibit 2**.   This shows that HUD acknowledged that state law applies to its security interest; meaning the creation of a new federal rule is not warranted and state law should be adopted. *See Kimbell*.

**ii.   *State law will not frustrate the objective of HUD.***

HUD alleges Plaintiff's interpretation of NRS 116.3116 would prevent "HUD from replenishing the Mutual Mortgage Insurance fund," "run the risk of substantially impairing the Government's participation in the home mortgage market" and "defeat the purpose of the National Housing Act." Mot. at 11-12.[5]  The alleged depletion of funds and need to protect federal interests is simply a "more money" argument which has been squarely addressed and dismissed in *O'Melveny & Myers,* 512 U.S. at 88-89, 114 S.Ct. at ___ (1994) where the Supreme Court stated,

> The closest respondent [FDIC] comes to identifying a specific, concrete federal policy or interest that is compromised by California law is its contention that state rules regarding the imputation of knowledge might "deplet[e] the deposit insurance fund," But neither FIRREA nor the prior law

---

[5] Plaintiff asserts HUD's performance in the HECM market is a form of social welfare and HUD will not likely deny this. Mot. at 11. Should the Court determine HUD's HECM program is akin to a social welfare program, *United States v. Marion County, Florida,* 826 F.Supp. 1400 (M.D.Fla. 1993), is instructive wherein the court stated, [t]his Court believes that, like the programs administered by the SBA and FmHA, the VA's lending program is a "form of social welfare" which does not warrant any preferred status" and ultimately held the purchasers at a tax lien sale took title free and clear of the VA's purchase money mortgage.

> sets forth any anticipated level for the fund, so what respondent must mean by "depletion" is simply the forgoing of any money which, under any conceivable legal rules, might accrue to the fund. That is a broad principle indeed, which would support not just elimination of the defense at issue here, but judicial creation of new, "federal common-law" causes of action to enrich the fund. Of course we have no authority to do that, because there is no federal policy that the fund should always win. Our cases have previously rejected "more money" arguments remarkably similar to the one made here.

*Id.* (*citing Kimbell Foods* at 737-738; *United States v. Yazell*, 382 U.S. 341, 348 (1966); *Robertson v. Wegmann*, 436 U.S. 584, 593 (1978). HUD is making the identical argument, such that if Nevada law is adopted it will not win. *See generally*, Mot. The "more money" argument is insufficient to warrant creation of new federal law and this factor rests in favor of Plaintiff.

### iii.   *A uniform federal rule would frustrate commercial relationships.*

HUD requests a federal rule be developed that requires judicial foreclosure. This is an oversimplification of the proposed rule and raises substantially more questions than it answers. In *Kimbell*, the court noted "[c]reditors who justifiably rely on state law to obtain superior liens would have their expectations thwarted whenever a federal contractual security interest suddenly appeared and took precedence." *Kimbell*, 440 U.S. at 739, 99 S.Ct. at 1464.

Again, this case is no different. Implementing a new federal rule would only frustrate the HOA lien foreclosure process. If all interests guaranteed by HUD must be foreclosed upon by judicial foreclosure, is the Court required to fashion additional rules requiring HUD to impart recorded notice for every loan it guarantees. Otherwise, how is a typical HOA going to be given notice of which foreclosure process must be implemented? Without additional rules, HOA's could begin the non-judicial foreclosure process only to have HUD pull the rug out from underneath it by taking an assignment from the lender who originated the loan. Think of the gamesmanship which could be had as a direct result of such a rule.

Furthermore, HOA's clearly depend on state law to collect the needed funds to survive and keep the development running; which is the main purpose of having community association. Currently, under NRS 116.3116, the HOA can complete a non-judicial foreclosure in a matter of months. *See* NRS 116.3116 *et seq.* Requiring non-judicial foreclosure would turn a three to four month process into potentially a ***three to four year process***, when you factor in exhausting appeal

-11-

rights.  Is HUD proposing additional rules be created to expedite the process, give preferential trial settings or limit the appealability of the Court's rulings to bring finality to the process?  The next question is what about the fees and costs associated with a judicial foreclosure process?  Currently, an HOA can complete a non-judicial foreclosure for a few thousand dollars.  **Exhibit 7**.  Under a judicial foreclosure process, the HOA will be required to pay the attorney, which could costs tens of thousands, and while NRS 116.3116 *et seq.*, allows for the recovery of attorneys' fees, there is no guarantee that the HOA will be made whole, which is the entire purpose of the HOA lien process.

Finally, should the Court create a new rule that requires all government guaranteed mortgages be foreclosed on by judicial foreclosure, the impact could be immense.  Would the new rule apply to loans held or otherwise secured by the Federal National Mortgage Association (Fannie Mae/FNMA) or the Federal Home Loan Mortgage Corporation (Freddie Mac/FHLMC).  Is HUD proposing rule only apply to HUD guaranteed loans?  Developing rules to answer the above questions would be akin to legislation.  Based on the numerous unanswered questions, it is evident why *Kimbell* properly noted "the prudent course is to adopt the ready-made body of state law as the federal rule of decision until Congress strikes a different accommodation," and ultimately held that "absent a congressional directive, the relative priority of private liens and consensual liens arising from these Government lending programs is to be determined under nondiscriminatory state laws."   *Kimbell*, 440 U.S. at 739, 99 S.Ct. at 1464-65.  Based on the above, should the Court determine a federal rule is necessary, it should not create a new law but rather keep with the current existing legislation, and in doing so, as set forth in greater detail below, deny the motion to dismiss.

**B.      THE LIEN WAS NOT "SUBJECT TO" HUD'S SECURITY INTEREST AND QUIET TITLE IS PROPER.**

Because Nevada law should apply, as set forth in greater detail, HUD's interest was in fact extinguished and HUD's motion should be denied.

///

///

///

1. **The Plain language of NRS 116.3116 shows Defendant's lien was extinguished.**

The HOA had a lien against the Property based on NRS 116.3116 which states in relevant part:

> **The association has a lien on a unit for any ... assessment levied against that unit or any fines imposed against the unit's owner from the time the construction penalty, assessment or fine becomes due.**

Here, the notice of delinquent assessment lien recorded by the HOA clearly states it is a lien for delinquent assessments. **Exhibit 7**.

The foreclosure of a HOA lien created by NRS 116.3116 based on assessments extinguishes inferior interests recorded against the property, including first security interests, even if the first security interest was recorded prior to the HOA lien.  The HOA lien is given superior status over other interests based on NRS 116.3116(2) which states the HOA Lien is *prior in time* to all other liens and encumbrances except:

> **(a) Liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to;**
> **(b) A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent or, in a cooperative, the first security interest encumbering only the unit's owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent; and**
> **(c) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative.**

Therefore, there only a select few interests which survive a HOA lien foreclosure sale.  While the HUD argues its first security interest is protected by the exception set forth in NRS 116.6116(2)(b), the decisive portion of NRS 116.3116(2) which is supports the granting of this application and motion states the HOA lien has priority over even a first security interest, as it states the HOA lien:

> **is also prior to all security interests described in paragraph (b) to the extent of any charges incurred by the association on a unit** pursuant to NRS 116.310312 and **to the extent of the assessments for common expenses** based on the periodic budget adopted by the association pursuant

1

2

> to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien....

3

4

(Emphasis added).  Therefore, when a lien contains assessments for up to nine months of common

5

expenses, it is considered prior in time to a first security interest, and the HOA Lien has the ability

6

to extinguish a first security interest; this type of lien is commonly referred to as a super-priority

7

lien.  HUD admits the HOA assessment lien is granted super priority in its motion.  *See* Mot. at

8

14:12-17.  In Nevada, foreclosure of a superior interest in real property extinguishes all junior

9

10

interests.  *See Brunzell v. Lawyers Title Ins. Corp.*, 101 Nev. 395, 705 P.2d 642 (1985); *Erikson*

11

*Construction Co. v. Nevada Nat. Bank*, 89 Nev. 350, 352, 513 P.2d 1236, 1238 (1973).[6]

12

    Therefore, at the conclusion of the HOA Lien foreclosure sale, with Plaintiff being the

13

successful bidder, NRS 116.31166(3) made the sale to Plaintiff final as it states "[t]he sale of a

14

unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the

15

16

unit's owner **without equity or right of redemption**." (Emphasis added).  The phrase "without

17

equity or right of redemption" is well understood in Nevada and means the title Plaintiff received

18

was "absolute legal title as complete, perfect and indefeasible as can exists or be acquired by

19

purchase...."  *In re Grant, 303* B.R. 205, 209 (Bankr. D. Nev. 2003) (quoting *Bryant v. Carson*

20

*River Lumbering Co.,* 3 Nev. 313,317-18 (1867)).  Since Plaintiff is the owner of the Property

21

22

under NRS 116.31166 and the HUD's interest was extinguished under NRS 116.3116(2), HUD

23

has no interest in the Property and quiet title is proper; meaning the motion to dismiss should be

24

denied.

25

///

26

27

28

---

[6] While the aforementioned cited cases do not involve HOA liens or the application of NRS Chapter 116, the principles of law and equity, including the law of real property supplement the provisions of NRS Chapter 116.  <u>See</u> NRS 116.1108.

**2. <u>A civil action is not required to trigger the super-priority lien found in NRS 116.3116.</u>**

In admitting the HOA lien is given superior status over its interest, HUD attempts to convince the Court that the super priority lien must be enforce through judicial proceedings. Mot. at 14. However, Nevada's statutory scheme allows for both and does not require judicial foreclosure in order for the super priority lien to be established. Plaintiff's interpretation is further supported by both the Nevada Real Estate Division as well as the Joint Editorial Board for Uniform Real Property Acts from the Uniform Law Commission.

    *i. NRS 116.3116 does not require a judicial foreclosure.*

Defendant asserts a judicial foreclosure is required to extinguish its interest. This argument is not supported by the statute in question or the scheme overall. If the Legislature meant for the term "action" to mean *judicial* foreclosure it could have easily defined the term as such as it has in other sections of the statutory scheme. *See e.g.,* NRS 116.2124 (indicating a common interest community may be terminated by commencing "an action in the District Court" where the community is located); NRS 116.795 (the commission or division may bring "an action in the District Court" against any person who has or is about to violate NRS Chapter 116). Therefore, when the Legislature wanted to insure the term "action" meant "judicial action" it clearly indicated as such in the statutory scheme. However, in NRS 116.3116 "action in the District Court" is notably absent and the phrase "institution of an action to enforce the lien" is present; indicating an action in the District Court is not required.

    *ii. The Nevada Real Estate Division states judicial foreclosure is not required.*

Where an agency is given legislative authority, "the court must defer to an agency's statutory interpretation so long as it is reasonable and not arbitrary and capricious." *Amalgamated Sugar Co. LLC v. Vilsack,* 563 F.3d 822, 831 (9th Cir. 2009); *see also, State Div. of Ins. v. State Farm Mut. Auto. Ins. Co.,* 116 Nev. 290, 293 (2000) (Nevada state courts are to give "great deference" to an agency's interpretation of a statute which said agency is charged with enforcing); *see also Dutchess Business Services v. Nev. State Bd. Of Pharmacy,* 124 Nev. 701, 709 (2008)

(stating the Nevada Supreme Court will "defer to an agency's interpretation of its governing statutes or regulations if the interpretation is within the language of the statute.").

In August of 2012, the Nevada Supreme Court determined the Nevada Real Estate Division was responsible for interpreting NRS Chapter 116 and issuing advisory opinions relating to the extent and priority of the HOA super-priority lien. *See State, Bus. & Indus. v. Nev. Ass'n Servs.*, 128 Nev. Adv. Op. 34, 2012 WL 3127275 at 4 (Nev. Aug. 2, 2012) ("We therefore determine that the plain language of the statutes requires that the CCICCH and the Real Estate Division, and no other commission or division, interpret NRS Chapter 116."). Therefore, "great deference" should be given to the Nevada Real Estate Division's interpretations of NRS 116.

On December 12, 2012, the Nevada Real Estate Division issued an opinion discussing HOA liens, the following question was posed:

> **Pursuant to NRS 116.3116, must the association institute a "civil action" as defined by Nevada Rules of Civil Procedure 2 and 3 in order for the super-priority lien to exist?**

**Exhibit 10** at 1. In answering the question in the negative, the Real Estate Division stated in summary:

> **No. The association must take action to enforce its super-priority lien, but it need not institute a civil action by the filing of a complaint. The association may begin the process for foreclosure in NRS 116.31162 or exercise any other remedy it has to enforce the lien.**

**Exhibit 10** at 2 (emphasis added). Even Real Estate Division, the same entity charged by the Nevada Supreme Court as the entity responsible for interpreting NRS Chapter 116, is of the opinion the HOA need not judicially foreclose in order to trigger the super-priority lien and that a non-judicial foreclosure of an HOA assessment lien extinguishes a first security interest.

### iii.   *The drafters of the UCIOA support Plaintiff's interpretation of the term "action."*

Plaintiff's interpretation of the term "action" is also consistent with that of The Uniform Law Commission, which entity is the drafter of the Uniform Common Interest Ownership Act ("UCIOA"); the act upon which Nevada's Chapter 116 is entirely based. Nevada Revised Statute

Section 116.3116 was modeled after Section 3-116 of the 1982 version of the UCIOA, originally drafted by the National Conference of Commissioners of Uniform State Laws. *Boulder Oaks Cmty Ass'n v. B&J Andrews Enterprises, LLC*, 125 Nev. 397, 404, 215 P.3d 27, 31 (2009). Nevada adopted the uniform law, including the provision specifying that the chapter "must be applied and construed so as to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." Nev. Rev. Stat. § 116.1109(2); *Boulder Oaks,* 125 Nev. at 404, 215 P.3d at 31.

The Uniform Law Commission "provides states with non-partisan, well-conceived and well-drafted legislation" **Exhibit 11**, and as noted above the UCIOA is the very foundation for Chapter 116. The Joint Editorial Board for Uniform Real Property Acts ("Editorial Board"), as a committee of the Uniform Law Commission, has provided a report regarding HOA liens under the Uniform Common Interest Ownership Act. **Exhibit 12**. The report is titled "The Six-Month 'Limited Priority Lien' for Association Fees under the Uniform Common Interest Ownership Act," Exhibit NUMBER. The purpose of the report is to "protect the integrity of [UCIOA] §3-116 and to provide guidance to the courts, the Board has prepared the JEB Report to clarify the intended application of § 3-116(c)'s limited priority lien in a variety of scenarios in which priority disputes might arise." **Exhibit 13.**

The Editorial Board's report clearly declared to the extent a court decision holds that a HOA lien foreclosure sale extinguishes a first security interest, "the decision is consistent with the proper understanding of the six month limited priority lien reflected in § 3-116." **Exhibit 12**. The Editorial Board in providing its report, further stated;

> Section 3-116(c) establishes that the association's lien is 'prior to' even the lien of a first mortgage to the extent of both "common expense assessments ... which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce the lien" and "reasonable attorney's fees and costs incurred by the association in foreclosing the association's lien.' A foreclosure sale of the association's lien (whether judicial or non-judicial) is governed by the principles generally applicable to lien foreclosure sales, i.e., a foreclosure sale of a lien entitled to priority extinguishes that lien and any subordinate liens, transferring those liens

to the sale proceeds. **Nothing in the Uniform Laws establishes (or was intended to establish) a contrary result.**

**Exhibit 12 at 9**. The report further notes that "action" does not necessarily mean "lawsuit." Instead, "an association may foreclose its lien by non-judicial proceedings if the state permits non-judicial foreclosure." **Exhibit 12** at 9, n. 8.

### 3. Courts have held Plaintiff's claims have merit and denied similar motions.

In attempting to discredit Plaintiff's position, Defendant cites cases from this District, which are non-binding on this Court; including *Diakonos*[7] and *Weeping Hollow*[8]. These decisions, and to the extent their progeny rely on these decisions (for example, *Bayview Loan Servicing*[9]) have been discredited by the Editorial Board cited above. In the report prepared by the Editorial Board, it specifically addressed the cases of *Diakonos* and *Weeping Hollow*. In conducting its analysis, the Editorial Board declared said decisions:

> **misread and misinterpret the Uniform Laws limited priority lien provision**, which provides the association with priority to the extent of assessments accruing in the period immediately prior to the association's **enforcement** of its lien. As discussed in the text, this constitutes a true lien priority, and thus **the association's proper enforcement of its lien would thus extinguish the otherwise senior mortgage lien**.

**Exhibit 12**, at n.9 (emphasis added). This report is in addition to the opinion of Carl H. Lisman, one of the original architects of the UCIOA. (ECF #1, Ex. B at Ex. 13). The creators of the UCIOA have once again reiterated the proper interpretation regarding UCIOA 3-116, and by implication NRS 116.3116, that when a HOA forecloses in a lien, the foreclosure extinguishes a mortgage lien. This only further confirms the proper reading of NRS 116.3116 serves to extinguish a first security interest such as the one held by the Defendant in this case.

---

[7] *Diakonos Holdings, LLC v. Countrywide Home Loans, Inc.*, No. 2:12-CV-00949-KJD, 2013 WL 531092 (D. Nev. Feb. 11, 2013).

[8] *Weeping Hollow Ave. Trust v. Spencer*, No. 2:13-CV-00544-JCM, 2013 WL 2296313 (D. Nev. May 24, 2013)

[9] *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, No. 2:13-CV-00164-RCJ, 2013 WL 2460452 at *3 (D. Nev. June 6, 2013), *reconsideration denied* 2013 WL 3943915 (D. Nev. July 8, 2013).

-18-

4. **Plaintiff's arguments are supported and by numerous court decisions; including decisions from this Court.**

In *7912 Limbwood Court Trust v. Wells Fargo Bank, N.A.*, ___ F.Supp.2d ___, 2013 WL 5780793 (D.Nev. Oct. 28, 2013) the Court denied a motion to dismiss which was brought against a party similar to that of Plaintiff.  In addition, several other courts have agreed that Plaintiff's claims have merit and have in fact granted preliminary injunctions consistent with Plaintiff's current request.  An order granting such relief came from the Federal District Court Judge Andrew P. Gordon.  **Exhibit 14**.  In determining a preliminary injunction was indeed warranted, and in reviewing NRS 116.3116, Judge Gordon also reviewed the May 30, 2013, order issued by the Judge Jerome Tao  of the Eighth Judicial District Court in Case No. A-13-677693-C, *First 100, LLC v. Burns, et al*.  Judge Gordon's order specifically references Judge Tao's order which contains a detailed analysis of NRS 116.3116; which the Judge Gordon found to be persuasive.  **Exhibit** 14 at n.1.

Judge Tao's order provides an in-depth, cognizant analysis of the application of NRS 116.3116 as it relates to a super-priority lien *vis a vis* a security interest in the form of a first deed of trust.  In entering his order, Judge Tao correctly stated at ¶¶ 36 and 37:

> (36) Thus, the operation of NRS 116.3116 appears as follows. NRS 116.316 [sic] creates a series of specific and unique requirements when an HOA imposes a lien against a property and wishes to initiate a foreclosure sale to satisfy unpaid assessments. Where NRC [sic] Chapter 116 is silent, the Court must presume that the Legislature intended that the ordinary and established principles governing the conduct of foreclosure sales in Nevada apply to "fill in the gaps."

> (37) Accordingly, when a homeowners' association imposes a lien for unpaid assessments, a portion of the unpaid assessments (not exceeding nine months) are entitled to "super priority" status over existing liens and mortgages. . . . [I]f those subordinate lienholders [including holders of first security interests] fail to stave off foreclosure by paying off the assessment, then their subordinate claims are paid off with any surplus proceeds of the foreclosure sale. After the sale is completed, any subordinate claims are automatically extinguished by operation of law.

**If the lender's mortgage remains unsatisfied after the foreclosure sale, it may be able to pursue a deficiency action against the mortgagor of record (the original defaulting party), but not against the property itself or against a new bona fide third-party who purchased the property at the foreclosure sale.**

**Exhibit 15** at ¶¶ 36 and 37 (internal citations omitted and emphasis added).

The orders of Judge Gordon and Judge Tao's are not isolated occurrences. Their opinions mirror opinions issued by Judge Linda Riegle of the United States Bankruptcy Court for the District of Nevada, Judge Susan Scann of the Eighth Judicial District of Nevada and Judge Elizabeth Gonzales of the Eighth Judicial District of Nevada. *See In re Gonzalez*, Case No. BKS-11-12044-lbr, Dkt. No. 44, at p.4, ¶¶ 9-14 (Bankr. D. Nev. Dec. 13, 2012) ("Pursuant to NRS 116.3116(2), any security interest in the Property held by [a bank with a first security interest] is junior to the Association's super-priority lien."); *Centeno v. MERS*, Case No. A-12-660999-C, September 12, 2012 Order, at p. 4 (Dist. Ct. Clark County, NV. September 12, 2012), ("The plain language of the statute supports [Plaintiff's] argument that [it] owns [the property] free and clear of the bank's lien."); *Wingbrook Capital, LLC v. Peppertree Homeowners Assoc.*, Case No A-11-636948-B, June 2, 2011 Order (Dist. Ct. Clark County, NV June 2, 2011), at p. 3, ¶¶ 2-3 ("Homeowners' associations . . . have a Super Priority Lien which has priority over the First Security Interest on a homeowners' unit."). Finally, while Defendant argues there is no precedential authority in agreement with Plaintiff's position, the converse is also true. Currently, there is no authority which is binding on this Court which has decided a first security interest in a parcel of property survives a HOA lien foreclosure action.

Furthermore, Plaintiff's interpretation of NRS 116.3116 would not render the exception in NRS 116.3116(2)(b) meaningless as HUD so wrongfully suggests. Mot. at 18. A review of NRS 116.3116(1) shows a lien held by an HOA contains many components, for example: monthly dues, late charges, fines, interest charges, penalties; all of which are collectable by the HOA through the

lien process.  NRS 116.3116.  Important for the Court's analysis is that under NRS 116.3116 some of these amounts have no effect on an interest held by HUD and some do.  The distinction is based upon what the HOA lien is composed of.  Regardless of the components, the HOA lien is given superior status over all other liens and encumbrances except the interests found in NRS 116.3116(2)(a) through (c).  Therefore, to the extent the HOA lien includes assessments for late charges, fines, interest charges, penalties, should the HOA foreclose, HUD's first security interest would survive the foreclosure sale.  However, when the HOA lien contains "assessments" for common expenses based on the periodic budget adopted by the HOA, the HOA lien is prior to, and therefore superior to first security interests.  NRS 116.3116(2).  Therefore, an "assessment" lien can be both inferior *and* superior to a first security interest; again, the distinction being based on what "assessments" actually make up the HOA lien.[10]

**5.   The HOA Lien clearly predates HUD's interest in the property.**

HUD believes the complaint must be dismissed because the HOA lien in this case was recorded subsequent to it taking its respective interest in the Property.  Mot. at 18-19.  However, NRS 116.3116(4) belies the validity of any such argument as it states:

---

[10] This is consistent with NRS 116.310312, as cited in NRS 116.3116(2), which allows the HOA to foreclose on the property to the extent the HOA incurs charges related to maintaining or abating the exterior of a vacant property. NRS 116.310312(6) states in relevant part,

> **Except as otherwise provided in this subsection, a lien described in subsection 4 is prior and superior to all liens, claims, encumbrances and titles other than the liens described in paragraphs (a) and (c) of subsection 2 of NRS 116.3116.**

Under NRS 116.310312, deeds of trust (paragraph (b) of Subsection 2) are specifically excluded as the statute only references paragraphs (a) and (c) of Subjection 2 of NRS 116.3116; therefore, liens for maintaining and abatement costs are superior to first deeds of trust and not merely given a payment priority.  This coincides with the reading under the second half of NRS 116.3116(2) which states the HOA lien,

> **is also prior to all security interests described in paragraph (b) to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115.**

When reading NRS 116.3116 in harmony with NRS 116.310312, the HUD cannot deny a lien for maintaining and abating property under NRS 116.31032 *must* extinguish a first security interest.  Which begs the question, how can NRS 116.3116 treat a lien under NRS 116.310312 and a lien for unpaid assessments for common expenses differently, giving one the ability to extinguish a first security interest and not the other?  The statute makes no such distinction between the two.

**Recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required.**

Therefore, under NRS 116.3116(4), HOA lien is not required to be recorded. The HOA lien is both *noticed and perfected* based on the date of recordation of the *declaration*. This issue was squarely addressed and summarily dismissed by the Honorable Judge Pro in *7912 Limbwood Court Trust v. Wells Fargo Bank, N.A.*, ___ F.Supp.2d ___, 2013 WL 5780793 (D.Nev. Oct. 28, 2013). There the court stated,

> Under usual race notice rules, Wells Fargo's lien would be superior to the HOA delinquency notice because the first deed of trust was recorded in 2004, and the HOA did not record a notice of default on the assessments until 2010. However, Chapter 116 provides that an HOA perfects its lien by recording the declaration, which provides notice to any future first deed of trust holder of the potential that, under the statute, a super priority lien may take priority over the first deed of trust, even if the notice of default on the assessments is recorded after the first deed of trust. Id. § 116.3116(4). Chapter 116 was enacted in 1991, and thus Wells Fargo was on notice that by operation of the statute, the 1995 Elkhorn CC&Rs might entitle the HOA to a super priority lien at some future date which would take priority over a first deed of trust recorded in 2004. Consequently, the conclusion that foreclosure on an HOA super priority lien extinguishes all junior liens, including a first deed of trust recorded prior to a notice of delinquent assessments, does not violate Wells Fargo's due process rights.

*Id.* This case is not factually different. As such, the HOA is given a priority date as of the date of recordation of the declaration; which predates any security interest held by HUD; which admittedly took its interest *after* the CC&R's and property was completed. **Exhibit 4.** Since the HOA lien is not required to be recorded to be perfected and is given a priority date based on the recordation of the declaration, the HOA Lien is superior and has the ability to extinguish the HUD's security interest.

///

///

///

1   **III.    <u>CONCLUSION.</u>**

2        Based on the foregoing, Plaintiff respectfully requests that this Court find that Nevada law

3   is the proper federal rule and that a new rule requiring judicial foreclosure not be implemented,

4   and in doing so deny Defendant's current motion to dismiss.

5                        DATED this 28th day of February, 2014.

6                              THE DEAN LEGAL GROUP, LTD.

7

8                              By <u>/s/ Aaron R. Dean</u>
                               AARON R. DEAN, ESQ.

9                              Nevada Bar #9541
                               THE DEAN LEGAL GROUP, LTD.

10                             612 S. 10th Street
                               Las Vegas, Nevada 89101

11                             (702) 823-1354
                               FAX (702) 823-2368

12                             Attorney for *Collegium Fund, LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

3     The undersigned hereby certifies that on the 28th day of February, a true and correct copy

4     of the above and foregoing OPPOSITION TO MOTION TO DISMISS, was served upon the

5     following, by depositing a copy of same in the United States Mail, postage prepaid, addressed to:

6     DANIEL G. BOGDEN
      United States Attorney
7     District of Nevada
      TROY K. FLAKE
8     Assistant United States Attorney
      United States Attorney's Office
9     333 Las Vegas Boulevard South, Suite 5000
10    Las Vegas, Nevada 89101

11

12                              /s/ Toni Hansen
                      Employee of THE DEAN LEGAL GROUP, LTD.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28