DANIEL G. BOGDEN
United States Attorney
District of Nevada

TROY K. FLAKE
Assistant United States Attorney
United States Attorney's Office
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
Telephone: 702-388-6336
Facsimile: 702-388-6787
Email: *troy.flake@usdoj.gov*

Attorneys for the United States.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| COLLEGIUM FUND, LLC, SERIES 5, a Nevada limited liability company, | Case No. 2:13-cv-01550-GMN-VCF |
| Plaintiff, | |
| v. | |
| WELLS FARGO BANK, N.A.; HOUSING AND URBAN DEVLOPMENT; ADELE KADANS; DOROTHY L. KEMP; DONALD R. KEMP; RAFAEL GIRALDO; LEONA MARTIN; and DOES I through X inclusive, | |
| Defendants. | |

### **UNITED STATES' REPLY IN SUPPORT ITS MOTION TO DISMISS**

The United States of America submits this reply memorandum in further support of its Motion to Dismiss (ECF 50). For the reasons set forth below, the United States' motion to dismiss should be granted.

**I.    INTRODUCTION**

The property at 324 Wild Plum Lane, Las Vegas, Nevada (the "Property") secures a promissory note belonging to the United States Department of Housing and Urban Development ("HUD") with a

balance of $307,774.32. HUD obtained its interest in the property under the Home Equity Conversion Mortgage ("HECM") program of the National Housing Act. 12 U.S.C. § 1715z-20.[1]

When the occupant of the property passed away, the HOA assessments went unpaid for a period of time. The HOA noticed a sale asserting a delinquent assessment lien for $6,039.70 (the "HOA Assessment Lien"). On July 12, 2013, the HOA sold the Property at a non-judicial foreclosure sale to satisfy the HOA Assessment Lien. Plaintiff alleges it paid $10,600.00 for its interest in the Property and now claims that the non-judicial foreclosure extinguished HUD's first security interest and that this Court should quiet title in Plaintiff's favor.

In its opposition, Plaintiff repeatedly asserts that the decisive issue in this case is lien priority. (Opposition at 5:19, 25 (ECF 53)). Contrary to Plaintiff's contentions, the issue in this case is whether non-judicial foreclosure of the HOA Assessment Lien extinguished HUD's first security interest in the property.

The Ninth Circuit has held that federal interest in property must be protected when there is a non-judicial foreclosure of an assessment lien. State law also provides that the first security interest survives non-judicial foreclosure of an HOA Assessment Lien. Accordingly, Plaintiff's complaint for quiet title should be dismissed.

## II. ARGUMENT

### A. THE FEDERAL INTEREST IN THE PROPERTY WAS NOT EXTINGUISHED BY THE NON-JUDICIAL FORECLOSURE SALE

#### 1. **Federal law, not state law, governs all issues relating to United States property, including liens.**

The parties agree that federal law, not state law, governs HUD's interest in the property, and that the Court is free to "fashion the governing rule of law according to [its] own standards." (Opp. at 6:1, citing *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367 (1943)). Accordingly, there is no dispute

---

[1] In its Motion, HUD mistakenly indicated that the HECM on the Property was part of the Mutual Mortgage Insurance fund. The HECM at issue in this case is part of HUD's General Insurance fund.

2

that the Court may decide what rule to adopt and it is free to fashion a governing rule of law that protects the federal interest from being extinguished by non-judicial foreclosure.

### 2. The Ninth Circuit has held that state rules should not be adopted where a foreclosure would extinguish a lien arising from a program under the National Housing Act.

The core issue in this case – whether non-judicial foreclosure of a lien can extinguish a federal interest in property – has been addressed by the Ninth Circuit. *See Rust v. Johnson*, 597 F.2d 174, 177 (9th Cir.), *cert. denied*, 444 U.S. 964, 100 (1979). In *Rust*, the City of Los Angeles attempted to foreclose on a property in which the Federal National Mortgage Association ("FNMA") had a mortgage interest. Like this case, the city argued that its actions were appropriate under a California law allowing non-judicial foreclosure to satisfy its delinquent special assessment for street and lighting improvements, and that it could convey absolute title after the sale. *Id.* at 180. The Appellant in *Rust* even made the same contention that Plaintiff makes here: the city argued that the relative priority of the liens should control. *Id.* at 179-180.

The Ninth Circuit rejected the argument that lien priority determined the outcome:

> Appellants' contention confuses the validity and priority of the lien with the real issue in this lawsuit. We are not concerned with the authority of the City to make the assessment or with the priority under state law of the street improvement lien….What we have decided is that **under federal law the improvement lien cannot be enforced without protecting the federal interest**.

*Id.* at 180 (emphasis added).

The *Rust* court determined that adopting a state law rule allowing this non-judicial foreclosure to extinguish the federal interest in the property would be an impermissible interference with federal policies and programs under the National Housing Act and would negatively affect liquidity in the mortgage market. *Id.* at 179. The *Rust* court also noted that Congress had not expressed intent for the program to be governed by state law and that the FNMA program was designed to facilitate home lending by purchasing mortgages that meet certain standards, but that it was not involved directly in issuing mortgages. *Id.* at 180.

3

Courts in our circuit have relied on *Rust* in deciding cases involving HUD mortgage insurance programs under the National Housing Act, as well as similar Veterans Administration housing programs. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Asso.*, 117 F. Supp. 2d 970, 981 (C.D. Cal. 2000) ("[j]ust as the Ninth Circuit concluded in *Rust*, the Court concludes that permitting a private entity to sell property owned by the federal government hinders the [HUD's] goal in carrying out congressionally mandated objectives" under the National Housing Act); *Yunis v. United States*, 118 F. Supp. 2d 1024, 1028-29 (C.D. Cal. 2000) (VA lending program).

*Rust* pointedly focuses the inquiry on whether the courts should adopt a rule extinguishing a federal interest and deals with a National Housing Act program, yet Plaintiff urges the Court to ignore it. Plaintiff does not address *Rust*, except to make the distinction that the federal interest in the property was obtained through the National Housing Act's secondary market program, rather than the National Housing Act's HECM insurance program (Opp. at 5:21-22). Plaintiff does not explain why this warrants disregard of circuit precedent. In *Sky Meadow,* the district court made no such distinction and applied *Rust* to a mortgage insurance program under the National Housing Act.[2] Accordingly, *Rust* is readily applicable to this case, as is its holding declining to adopt a state statutory scheme that permitted non-judicial foreclosure to extinguish the federal interest in the property. *Rust*, 597 F.2d at 179.

### 3. The issue in this case is whether the federal interest can be extinguished by non-judicial foreclosure, not lien priority.

The *Rust* opinion was issued shortly after the Supreme Court decided *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726-27 (1979). *Kimbell Foods* addresses whether the federal court should adopt a state rule of decision in determining lien priority for interests obtained through individualized

---

[2] Plaintiff also tries to distinguish *Yunis* and *Sky Meadow* because "the relevant government agencies held title to the property and not merely a security interest in the property" (Opp. at 5:10-11). The Ninth Circuit has held that "[n]o basis in law exists for treating mortgage interests of federal instrumentalities differently from other property of the United States." *Rust,* 597 F.2d at 177 (citing cases). Accordingly, although *Yunis* and *Sky Meadow* involved ownership interests, they relied on *Rust*, which involved a lien interest. *See*, *e.g.*, *Sky Meadow,* 117 F. Supp. 2d at 981. Each of these cases is consistent with HUD's argument that courts should not adopt a state rule allowing a non-judicial foreclosure to extinguish a federal interest in property.

4

loans under the Small Business Act and the Consolidated Farmers Home Administration Act of 1961 and ultimately adopts state law rules for determining lien priority. *Id*.

It is easy to explain the different results in *Rust* in *Kimbell Foods* since the issue in *Kimbell Foods* was the priority of the liens, while the issue in *Rust* was whether the lien was extinguished by non-judicial foreclosure, and because the programs in *Kimbell Foods* were different from the National Housing Act program in *Rust*. The Supreme Court denied certiorari in *Rust* just seven months after it unanimously decided *Kimbell Foods*. *See Rust v. Johnson*, 444 U.S. 964 (1979) (denying certiorari). While both cases are good law, only *Rust* deals with the very issues in this case: whether non-judicial foreclosure of an assessment lien can extinguish an interest obtained under a National Housing Act program.

Plaintiff asserts that *Kimbell Foods* "is dispositive to the current motion and warrants its denial" (Opp. at 6:5). However, *Kimbell Foods* does not compel application of state law in this case. HUD has not argued that its first security interest would necessarily have priority over an HOA Assessment Lien. Yet Plaintiff's analysis of *Kimbell Foods* focuses entirely on lien priority and says nothing about whether the non-judicial foreclosure extinguished the federal interest (*see* Opp. at 6:14-15). Plaintiff does not explain how *Kimbell Foods* requires this Court to adopt a rule that non-judicial foreclosure of the HOA's Assessment Lien extinguishes HUD's lien – a rule that would be contrary to *Rust*.[3]

### 4. This Court should not adopt state law as the federal rule of decision.

Plaintiff's Complaint depends on this Court not only adopting Nevada law as the federal rule of decision, but also on it adopting Plaintiff's problematic interpretation of NRS § 116.3116. Both *Rust* and *Kimbell Foods* contain useful analysis of some factors that courts may use in determining whether to adopt a federal rule of decision.

---

[3] In a different section of the Opposition, Plaintiff asserts that, under Nevada law, foreclosure of a senior lien extinguishes all junior liens (s*ee* Opp. at 14:8-9). The majority of federal and state courts do not agree that the HOA lien statute, NRS § 116.3116, allows non-judicial foreclosure to extinguish the first security interest. But even if it did, as the *Rust* court pointed out, accepting state rules of priority does not determine extinguishment of the federal interest. In adopting a federal rule, courts may decide "only particular elements of state law are superseded." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 508 (1988) (citing *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 595, (1973)).

5

Plaintiff objects to HUD's analysis of factors beyond the three-part test identified in *Kimbell Foods,* arguing that factors considered by the *Rust* court should be "disregarded entirely" (Opp. at 7:11-12). Yet both courts examined similar factors, and since this case involves adopting a rule for extinguishing federal interest obtained under the National Housing Act, it is appropriate to examine the factors considered by the Ninth Circuit when it concluded that a state law assessment scheme could not extinguish a federal lien. *See Rust*, 597 F.2d at 179-181.

### a. *The HECM program requires a uniform federal rule.*

According to *Kimbell Foods* "when there is little need for a nationally uniform body of law, state law may be incorporated as the federal rule of decision." 440 U.S. at 728. To determine the need for uniform state rules, both *Kimbell Foods* and *Rust* analyzed the operating practices of the programs at issue. *Id*. at 732 (SBA and Farmer's Home Admin.); *Rust*, 597 F.2d at 180 (FNME). *Sky Meadow* followed this approach in determining whether an HOA could foreclose on HUD's interest obtained through a similar National Housing Act insurance program and concluded that unlike *Kimbell Foods*:

> The present case, however, **does** require a uniform federal practice. It is doubtful, here, that Congress in enacting the Single Family Mortgage Insurance Program, intended "the outcome to depend upon varying characterizations of state law."

117 F. Supp. 2d at 978 (emphasis added) (citing *United States v. Lewis County*, 175 F.3d 671, 677 (9th Cir.1999), cert. denied 528 U.S. 1018 (1999)); *see also U.S. v. City of St. Paul*, 258 F.3d 750 (8th Cir. 2001), cert. denied 535 U.S. 904 (2002) (city ordinance did not apply because "HUD must be able to carry out its federal functions in a relatively uniform fashion."); C*ity of Country Club Hills v. U.S. Dep't of Hous. & Urban Dev.*, 99 C 7139, 2001 WL 1117276 (N.D. Ill. Sept. 17, 2001) (burden of complying with city building code impermissibly impeded HUD's mandate under the National Housing Act).

Plaintiff notes the *Kimbell Foods* Court's observation that SBA compliance with state law would produce no hardship because the SBA individually negotiated in "painfully particularized detail" each loan transaction and that SBA used local lending offices with employees who were familiar with local laws and formalities (Opp. at 8:23-28, 9:1-3, citing *Kimbell Foods*). Plaintiff then asserts that "[t]his case is identical to *Kimbell* in this regard" (Opp. at 9:5). In reality, the HECM program is very different.

6

The HECM program is a national loan insurance program under the National Housing Act, 12 U.S.C. § 1715z-20.  The statute authorizes HUD to implement a government program providing optional insurance to lenders who offer qualifying reverse mortgages to elderly homeowners. *Id*. The goal is to allow elderly homeowners to remain in their homes and convert "a portion of accumulated home equity into liquid assets." 12 U.S.C. § 1715z-20(a)(1).  This program is conducted on a vast scale: as of 2011, the HECM program insures more than 580,000 properties nationwide.  *See* Report to Congress on Reverse Mortgages, June 2012, at p.14.[4]

Under the HECM program, HUD sells insurance to lenders. 24 C.F.R § 206.15.  Unlike the SBA loans in *Kimbell Foods*, HUD does not guarantee the mortgages.  Lenders can make a claim on the insurance under various circumstances such as a default.  Unlike a guarantee, the lender can also assign the mortgage to HUD when the mortgage balance is equal to or greater than 98 percent of the maximum claim amount. *See* 24 C.F.R. § 206.107(a)(1).[5]  The lender, not the borrower, is responsible for paying the mortgage insurance premium. *See* 24 C.F.R. §§ 206.105; 206.111(a).  HUD and the borrower are not in privity of contract. *See Rust,* 597 F.2d at 180 (noting that FNMA was not a party to the original contract).

Plaintiff also asserts that "HUD cannot deny that each loan is specifically tailored to each borrower as in *Kimbell*" (Opp. at 9:15). As evidence of supposedly undeniable specific tailoring, Plaintiff cites general requirements that apply to all borrowers of insured loans. 24 C.F.R. §§ 206.17-51.  This is the opposite of specific tailoring.  Such uniform standards reinforce the need for a uniform federal rule. *See Rust,* 597 F.2d at 180 (noting FNMA only purchases loans of a certain quality, type and class).

In fact, HUD does not approve loans to individual borrowers *at all*.  Lenders originate HECM loans and HUD employees are not involved in the loan origination process. *See* 24 C.F.R. § 206.15.

---

[4] Available at: http://files.consumerfinance.gov/a/assets/documents/201206_cfpb_Reverse_Mortgage_Report.pdf

[5] On September 3, 2008, Wells Fargo Bank, N.A. ("mortgagee") assigned the property's first security interest to HUD due to its election of the assignment option pursuant to 24 C.F.R. § 206.107(a)(1).

7

HECM insured loans are made to general standards and do not reflect the "painfully particularized detail" of the specifically tailored SBA loans Plaintiff compares them to (Opp. at 8:23-28, 9:1-3, citing *Kimbell Foods*).

The HECM program sells insurance to private lenders nationwide for loans that they originate and administer. It is vastly different from the individualized programs at issue in *Kimbell Foods*. As in *Rust* and *Sky Meadow*, such National Housing Act programs present a compelling need for a nationally uniform body of law governing extinguishment of federal interests obtained through the program.

### *b.     Congressional intent to have state law govern the federal program.*

Where Congress has not expressed intent to have state law govern the federal program, courts should adopt a rule that protects the federal interest. *Rust,* 597 F.2d at 180 ("This is not a case where Congress has allowed the federal interest to be subject to state law."). Congress has not indicated intent that state law govern HUD's HECM program. *See generally* 24 C.F.R. § 206.1.

Plaintiff claims that HUD's Handbook "shows that Nevada law should apply" (Opp. at 9:24). The manual cited in *Kimbell Foods* instructed SBA employees to follow state law. The HUD Handbook cited by Plaintiff requires lenders to use uniform federally approved mortgage forms to originate loans that will eventually be insured by the HECM program. (Exhibit: Excerpt of HUD Handbook 4235.1 REV-1, Home Equity Conversion Mortgages, Chapter 6-2 General Instructions (November 18, 1994)). The language plaintiff cites simply directs private lenders originating loans that HUD will later insure to adapt the uniform federal forms only "as may be necessary to conform to State or local requirements" in the states where the lenders operate. *Id*. This is a prudent policy; however, it does not reflect intent to have the federal government's interest in property determined by state law.

### *c.     Application of state law would frustrate the specific objectives of the HECM program.*

Both *Rust* and *Kimbell Foods* examined whether state law would interfere with the federal program at issue. *See Kimbell Foods,* 440 U.S. at 728 ("[W]e must … determine whether application of state law would frustrate specific objectives of the federal programs.). The *Rust* court held that

8

permitting non-judicial foreclosure to extinguish the federal interest "would run the risk of substantially impairing the Government's participation in the home mortgage market and of defeating the purpose of the National Housing Act." 597 F.2d at 179.

Pursuant to the National Housing Act, the specific objectives of the HECM program are:

> (1) to meet the special needs of elderly homeowners by reducing the effect of the economic hardship caused by the increasing costs of meeting health, housing, and subsistence needs at a time of reduced income, through the insurance of home equity conversion mortgages to permit the conversion of a portion of accumulated home equity into liquid assets; and
>
> (2) to encourage and increase the involvement of mortgagees and participants in the mortgage markets in the making and servicing of home equity conversion mortgages for elderly homeowners.

12 U.S.C. § 1715z–20(b)(1); 24 C.F.R. § 206.33.

HECM has a financial aspect, so Plaintiff criticizes HUD's request for protection of its interest as a "more money" argument (Opp. at 11:9). The program benefits elderly homeowners and failure to adequately protect the federal interest will increase the burden of administering the program and could limit the number of participants. Accordingly, the impact will fall on the very people the program intends to benefit.

### d. *Application of a federal rule would not unduly disrupt commercial relationships predicated on state law.*

*Kimbell Foods* counsels courts to consider the extent to which application of a federal rule would disrupt commercial relationships predicated on state law. 440 U.S. at 729. It is appropriate for Courts to fashion rules of decision relating to federal property interests, even if it forces lienholders to use unique procedures for properties where there is federal interest. For example, in *Rust* the Court disregarded California's established statutory scheme for financing street and lighting improvements and held that "under federal law the improvement lien cannot be enforced without protecting the federal interest." *Rust*, 597 F.2d at 180. Similarly, in *Sky Meadow* and *Yunis* the court adopted a federal rule that did not allow HOAs to engage in their normal state law procedure for collecting past due assessments. *See*, *e.g.*, *Sky Meadow*, 117 F. Supp. 2d at 981.

9

Plaintiff argues that if Court adopts a rule requiring judicial foreclosure of an assessment lien to extinguish the federal interest, the foreclosure process will be frustrated. Congress already requires judicial sale to quiet title or extinguish a federal lien in actions proceeding under 28 U.S.C. § 2410, so the dire consequences and delays Plaintiff predicts are unlikely. Plaintiff also claims that the Court would be "required to fashion additional rules requiring HUD to impart recorded notice for every loan it guarantees" (Opp. at 11:18-20). This misstates HUD's argument. HUD has not proposed a rule that HOA must judicially foreclose on all properties insured under the HECM program, but only on properties where the HOA seeks to extinguish the federal government's lien. Plaintiff's speculation about the effect of this rule on loans guaranteed by Fannie Mae and Freddie Mac is similarly unwarranted.

In *Rust*, *Sky Meadow*, and *Yunis,* the courts adopted rules that protected the federal interest. Nothing prevents this Court from similarly deciding to protect the federal interest in the Property from extinguishment after a non-judicial foreclosure of the HOA Assessment Lien.

### B. PLAINTIFF CANNOT QUIET TITLE IN ITS FAVOR BECAUSE IT TOOK THE PROPERTY SUBJECT TO HUD'S FIRST SECURITY INTEREST

The Court should dismiss Plaintiff's Complaint for quiet title based on the plain and unambiguous language of Nev. Rev. Stat. § 116.3116.

#### 1. Foreclosure of an assessment lien created by NRS § 116.3116 does not extinguish HUD's Deed of Trust.

NRS § 116.3116 provides that an HOA lien is prior to all other liens and encumbrances. However, the statute carves out an important exception to the HOA lien's priority for "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent...." NRS § 116.3116(2)(b).

The exception in subpart (2)(b), preserving the priority of the first security interest, has one caveat: the HOA assessment lien has limited super-priority over first security interest "to the extent of any charges incurred by the association on a unit pursuant to NRS § 116.310312 and to the extent of the

10

assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS § 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien ..." [6]  NRS § 116.3116(2)(c).

Nothing in the statute states that a non-judicial foreclosure gives the association's lien super-priority status over the first security interest or provides that the sale extinguishes the first security interest.

### 2.  **An HOA non-judicial foreclosure is not an "action" giving rise to a super-priority lien.**

The language of the statute creating the HOA's super-priority lien for nine months of assessments is clear: the nine month portion of the HOA lien attains super-priority upon the "institution of action to enforce the lien." *Id.*

The term "action" in the ordinary sense means to file or bring a lawsuit. *See, e.g.*, Fed. R. Civ. P. 2 and 3; *see also Seaborn v. First Judicial Dist. Court*, 29 P.2d 500, 505 (Nev. 1934) ("An 'action' is a judicial proceeding, either in law or equity, to obtain certain relief at hands of court"); *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006) ("The key terms in this provision – 'action' and 'complaint' – are ordinarily used in connection with judicial, not administrative, proceedings"). Other portions of NRS § 116.3116 use "action" to mean a judicial proceeding. *See*, *e.g.*, NRS §§ 116.3116(7); 116.3116(10). Accordingly, an action is required in order for the HOA assessment lien to attain super-priority status.

#### *a.  The Nevada Real Estate Division Opinion is unpersuasive.*

Plaintiff argues that the Nevada Real Estate Division's Opinion supports its contention that an HOA "need not judicially foreclose in order to trigger the super-priority lien and that a non-judicial foreclosure of an HOA assessment lien extinguishes a first security interest." (Opp. at 16:23-24). This interpretation is contrary to a plain reading of the statute and similar arguments have been raised and

---

[6] Section 116.310312 concerns HOA fines and costs imposed when an HOA must maintain the exterior of a unit in accordance with the CC & R or remove or abate a public nuisance on the exterior of the unit where the unit owner has failed to do so. *See id.* section 116.310312(2). *See also* section 116.3115 governing regular HOA dues.

rejected by state and federal courts. *See*, *e.g.*, *Ferrell Street Trust v. Massis*, No. A-12-669726, 2013 WL 7393548 (Dist.Ct. Nev. Oct. 16, 2013) (Trial Order) ("'Action' as used in NRS § 116.3116 means a judicial foreclosure"[7]); *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, No. 2:13-CV-00164-RCJ-NJK, 2013 WL 2460452 at *5 (D. Nev. June 6, 2013) (considering whether the Opinion supported an argument that foreclosure of an assessment lien extinguishes a first security interest and finding it "unpersuasive"). Consistent with the plain language of the statute, several Nevada courts have held that NRS § 116.3116 requires the HOA to commence a judicial action to establish the super-priority portion of its lien. *See, e.g., SFR Inv. Pool 1, LLC v. DHI Mortg. Co., Ltd.*, No. 12A675799, 2013 WL 5778527 (Dist. Ct. Nev. Sept. 25, 2013) (Trial Order ); *SFR Inv. Pool 1, LLC v. Nat'l City Bank*, No. 13A676349, 2013 WL 5778584 (Dist. Ct. Nev. Sept. 13, 2013 ) (Trial Order ); *Paradise Harbor Place Trust v. Selene Fin., LP*, No. 13A675032, 2013 WL 5778547 (Dist. Ct. Nev. Sept. 13, 2013) (Trial Order ).

### *b.   States with similar statutory schemes require judicial sale.*

Plaintiff also cites the Uniform Common Interest Ownership Act ("UCIOA") as support for its contention that a non-judicial sale constitutes an action. Yet Plaintiff does not point out any state statute based on the UCIOA that allows non-judicial foreclosure to extinguish the deed of trust or cite any case where a non-judicial foreclosure extinguished a first security interest. *Compare* Colo. Rev. Stat. § 38-33.3-316 (11)(b) (association's lien must be foreclosed like a mortgage on real estate) and Colo. Rev. Stat. §38-39-101 (private deed of trust must be foreclosed judicially); *see also Diakonos Holdings, LLC v. Countrywide Home Loans, Inc.*, 2013 WL 531092 (D. Nev. Feb. 11, 2013) (noting that "[t]he Washington statute at issue in that case specifically provides that when an association pursues nonjudicial foreclosure, it is not entitled to lien priority which would extinguish the first security interest.").

The express terms of NRS § 116.3116(2)(b) preserve the seniority of HUD's first security interest for all purposes unless there is an "action to enforce the lien." Because the HOA never commenced an action, the 9-month portion of the HOA's lien never obtained super-priority and HUD's

---

[7] The pleading citing the Opinion is available on Westlaw at 2013 WL 7772706.

first security interest is not disturbed. Accordingly, Plaintiff's claim to quiet title fails as a matter of law.

### 3. **Plaintiff fails to state a claim because Nevada courts have repeatedly held that foreclosure of an assessment lien does not extinguish the first security interest.**

As the Court is well aware, NRS § 116.3116 is being actively litigated in Nevada's state and federal courts and the Court has noted the "varying interpretations that the Nevada state courts and the judges of this district have given" to NRS § 116.3116. *Platinum Realty & Holdings, LLC v. Lee*, No. 2:13-cv-00535-GMN-NJK, 2014 WL 176788 (D. Nev. Jan. 13, 2014). HUD's Motion and Plaintiff's Opposition cite some of these varying decisions, and HUD will not recount them all here.

However, Plaintiff does not cite, and HUD has not found, any case where a court has *actually* quieted title in favor of a party based its interpretation of NRS § 116.3116 and *actually* extinguished a prior recorded deed of trust. Yet state and federal courts have repeatedly granted motions to dismiss like this one, on the basis that non-judicial foreclosure does not extinguish the first security interest. *See, e.g. Kal–Mor–USA, LLC v. Bank of America, N.A.*, No. 2:13-cv-0680-LDG-VCF, 2013 WL 3729849 (D. Nev. July 8, 2013) (denying preliminary injunction and granting dismissal and summary judgment); *French v. Sweetwater Homeowners' Ass'n, Inc.*, No. 12A667931, 2013 WL 6331754 (Dist. Ct. Nev. Apr. 26, 2013) (granting motion to dismiss SFR Investment's crosscomplaint and holding judicial foreclosure necessary to extinguish a first deed of trust at a foreclosure sale for delinquent common homeowners association assessments). Accordingly, HUD requests that the Motion to Dismiss be granted.

### III. CONCLUSION

Plaintiff's Complaint asks this Court to determine that the non-judicial foreclosure of the HOA assessment lien extinguished HUD's first security interest. Because HUD is a federal entity governed by federal law, this Court must adopt a federal rule of decision that protects the federal interest. Further, even under state law, Plaintiff fails to state a claim because the plain language of NRS § 116.3116 preserves the first security interest after a non-judicial foreclosure of an HOA lien.

1 | Accordingly, HUD requests that the Complaint be dismissed.

2 | Respectfully submitted this 7th day of March, 2014.

                    DANIEL G. BOGDEN
                    United States Attorney

                    */s/ Troy K. Flake*
                    TROY K. FLAKE
                    Assistant United States Attorney

# PROOF OF SERVICE

I, Troy K. Flake, certify that the following individual was served with copies of **UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS** on March 7, 2014, by the below identified method of service:

CM/ECF:

Aaron R. Dean, Esq.
THE DEAN LEGAL GROUP, LTD.
612 S. 10th Street
Las Vegas, NV 89101

                                           */s/ Troy K. Flake*
                                           TROY K. FLAKE
                                           Assistant United States Attorney